CHICAGO—FIRST DISTRICT—OCTOBER, 1912.  129

Blake v. De Jonghe Hotel & Restaurant Co., 174 Ill. App. 129.

---

**Eugenie Blake, Appellant, v. DeJonghe Hotel & Restaurant Company, Appellee.**

### Gen. No. 17,361.

1. MUNICIPAL COURTS—*when partial invalidity of section of act does not destroy entire section.* The fact that part of section 22 of the Municipal Court Act, relating to the filing of records on appeal, has been declared unconstitutional, does not render the entire provision relating to appeals unconstitutional.

2. APPEALS AND ERRORS—*when appellee estopped to question defective bill of exceptions.* An amendment to a bill of exceptions improperly allowed by the successor of the trial judge cannot be complained of by an appellee where the record shows that the amendment was expressly agreed to.

3. APPEALS AND ERRORS—*when bill of exceptions will be presumed regular.* Where a bill of exceptions signed November 23, 1910,

bears the file mark of December 8, 1910, when the trial judge was no longer in office, and the question of its regularity is not otherwise raised, in the absence of any showing to the contrary, the presumption of regularity will be indulged.

4. MUNICIPAL COURTS—*objections need not be saved to refused propositions of law.* The Municipal Court Act, sec. 38, permits a review of a cause when no exceptions to refused propositions of law were saved.

5. INNKEEPERS—*who are guests.* Where a person registers at a hotel and is given a weekly rate for no definite period, such arrangement of itself does not change the person's status from a transient or guest to a mere lodger.

6. INNKEEPERS—*what shows negligence.* Where a guest of the hotel hands the clerk in charge of the office a box of jewelry for safe-keeping and it is placed in a safe and a key in the inner door of the safe is left in the lock, so that one opening the outer door would have easy access to the jewelry, which is stolen by a night elevator boy, it would seem to show a failure by the proprietor to exercise reasonable care.

7. INNKEEPERS—*what shows negligence.* Where a hotel keeper posts notices of the existence of a safe for the keeping of valuables of guests, and a box of jewelry given the office clerk for safe-keeping is placed in a safe used mainly for keeping stationery and similar articles, and is not placed in a safe in the manager's room constructed for keeping money and jewelry, the proprietor is liable for its loss by theft.

8. INNKEEPERS—*guests need not state value of jewelry deposited.* Under the Act of 1909, for the protection of innkeepers, it is not necessary for a guest to acquaint the innkeeper with the approximate value of jewelry delivered for safe-keeping in a safe.

9. APPEALS AND ERRORS—*when final judgment will be entered in the appellate court.* Where on reversal of a case heard by the court without a jury, the undisputed record shows damages in excess of plaintiff's own estimate, the Appellate Court will enter judgment for at least that amount even though there was incompetent evidence of value received.

Appeal from the Municipal Court of Chicago; the HON. STEPHEN A. FOSTER, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1911. Reversed and judgment here. Opinion filed October 22, 1912.

PAIN, CAMPBELL & KASPER, for appellant; FREDERICK J. KASPER and JAMES L. COLEMAN, of counsel.

ROY D. KEEHN, for appellee.

Mr. Justice Barnes delivered the opinion of the court.

This is a case of the first class brought for the loss of jewelry delivered to defendant for safe keeping while plaintiff was a guest at defendant's hotel. It was tried by the court without a jury and the finding was for defendant.

Certain objections to consideration of the record are urged by appellee. First: It is contended that as that part of Section 22 of the Municipal Court Act, relating to the filing of records on appeal, has been declared unconstitutional, the entire provision relating to appeals is unconstitutional, and that, therefore, no statutory right of appeal in such a case exists. In this we do not concur, and the motion to dismiss the appeal will be denied.

Second: It is urged that an amendment to the bill of exceptions was improperly allowed by the successor of the trial judge, and, therefore, cannot be considered. The question is not raised by any motion, but if it were, inasmuch as the record shows that such amendment was expressly agreed to, appellee should not be permitted to complain.

Third: Attention is called to the fact that the bill of exceptions, though signed November 23, 1910, bears the file mark of December 6, 1910, when the trial judge was no longer in office. The question of its regularity is not otherwise raised, and, in the absence of any showing to the contrary, the presumption of regularity will be indulged.

Fourth: It is further urged that no exceptions to appellant's refused propositions of law were saved, and that, therefore, the court's ruling is not subject to review. The contention is that Section 38 of the Municipal Court Act dispenses with formal exceptions only to rulings "against the objection of the party complaining." The act is remedial in its nature and broad enough in its spirit and purpose, as we think, to embrace matters to which no objection is required,

and to warrant our review of the ruling, even if Section 81 of the Practice Act is not applicable.

Fifth: It is urged that appellant was a lodger and not a guest. Defendant is a hotel company and kept a hotel or inn. Plaintiff came to Chicago on a temporary visit and registered at defendant's hotel. She arrived there July 12, 1910, and remained until July 21st. When assigned a room, she was given a rate of $21 per week for no definite period. This arrangement of itself did not, as contended by appellee, change her status from a transient or guest of the hotel to a mere lodger. Hancock v. Rand, 94 N. Y. 1; Bullock v. Adair, 63 Ill. App. 30; Moon v. Yarian, 147 Ill. App. 383.

Passing to appellant's contentions, we find the material facts to be that upon registering, she handed the day clerk in charge of the office a box of jewelry for safe keeping, and said nothing about its value. From what the clerk said about a receipt at that time it is clear that a demand therefor, if necessary, was duly waived. Two or three days afterwards it was found that the box was missing from the safe. Suspicion was directed to a night elevator boy, who, in the meantime, had disappeared without drawing his salary, and who, as the evidence tends to show, in some way got into the safe and stole the jewelry. Part of it was subsequently recovered through the police. He had been employed in the capacity aforesaid about two weeks, and when the night clerk in charge of the office had occasion to leave it for a few minutes, the boy was called in so the office would not be left without some one there. The night clerk testified that on the night of July 13th the boy was called in on such an occasion, and that the safe was locked when the clerk left duty in the morning. Whether the safe was at any time unlocked during that night or so left that one could easily get to its contents does not appear. It does appear, however, that a key in the inner door was left in the lock so that one opening the

outer door had easy access to the jewelry, and that the boy on that night, or the next, stole the jewelry. If these facts do not sufficiently show failure to exercise the reasonable care required of even a gratuitous bailee (Gray v. Merriam, 148 Ill. 179), to keep in proper condition a safe into which appellant, by the statutory notices, was impliedly invited to leave her jewelry for safe keeping, the following facts sufficiently establish neglect for which defendant should be held liable.

Both the night and day clerks testified that the office safe was used mainly for keeping stationery and similar articles; that it was not the safe constructed for keeping money and jewelry, but that the safe for that purpose was kept in manager DeJonghe's room. The latter then was the safe that was referred to in the posted notices, and kept under the terms of the statute for appellee's protection. Appellant might well assume, from the posted notices of the existence of such a safe for the deposit of valuables, that they would be placed in the safe kept for that purpose. Under such circumstances we think it was negligence to deposit the jewelry in an insecure place not designed therefor, as the clerk well knew. The failure to place the jewelry in the proper safe cannot be charged to the guest.

The court, in accordance with said pleas and theory of defense, refused to hold as law certain propositions submitted by appellant which, we think, were appropriate to the case, and that in so doing there was error. Two of said propositions were as follows:

"(4)  Section 1 of an act for the protection of inn-keepers of June 9, 1909, applies to a deposit of jewelry by a guest with an inn-keeper for safe keeping in a safe provided by such inn-keeper. Section 3 of said act does not apply."

"(5)  Neither by common law nor under the statute for the protection of inn-keepers of June 9, 1909, is it necessary for a guest to notify the inn-keeper of

the special or approximate value of jewelry where such guest deposits said jewelry with the inn-keeper for safe keeping in a safe provided by such inn-keeper.''

Section 1 of said act relates to liability of an inn-keeper for loss of ''money, jewelry and other valuables of his guests,'' when he provides a safe or other repository for their safe keeping and posts proper notices that he will receive the same. Section 3 relates to liability for loss of ''any baggage or other article of property of such guest'' delivered for safe keeping, and contains this proviso:

''Provided, that before such guest shall deliver to such hotel proprietor, or his employees, any trunk, valise, traveling case or other receptacle containing property or effects of special or unusual value for safe keeping or for any purpose, he shall notify such hotel proprietor to that effect, and acquaint such hotel proprietor with the approximate value thereof, and upon his failure so to do, such hotel proprietor shall not be liable to such guest for the loss of or damage to, such contents of such trunk, valise, traveling case or receptacle.''

Applying the doctrine of *ejusdem generis* to the words ''and other valuables'' in Section 1, the term ''valuables'' must be held to refer to articles like money or jewelry, or articles of value that are ordinarily kept in packages that may be readily placed in a safe expressly constructed as the statute contemplates for their safe keeping. And, applying the same doctrine to the words ''or other article of property,'' in Section 3, and the words ''or other receptacle,'' in the proviso therein, they must be held to refer to some form of baggage like a trunk, valise, traveling case or whatever receptacle a traveler might seek to have checked in a room ordinarily used for the safe keeping of baggage. In re Swigert, 119 Ill. 83; Gundling

v. City of Chicago, 176 Ill. 340; Gaither v. Wilson, 164 Ill. 544.

The purpose of the statute in requiring the guest to notify the proprietor of the approximate value of property or effects of special or unusual value contained in a trunk or other form of baggage, is manifestly to enable the proprietor to protect himself against claim for the loss of such specific contents by giving such trunk or similar receptacle greater care than he would otherwise give ordinary baggage. The statute makes a clear distinction between valuables like money, jewelry or similar articles of worth when delivered to be kept in a safe, and when contained in a trunk or similar form of baggage delivered over to be checked as such. The inn-keeper's liability for loss of the former may be to the amount of $250, but not more than $150 for loss of the latter, depending upon the character of the receptacle; and he becomes absolutely exempt from liability for the latter unless before the delivery of the baggage, the guest acquaints him with the approximate value of articles of special value contained therein, and demands a check or receipt for the receptacle. No such notice or demand is required as a condition precedent to liability for the loss of an article delivered to be kept in a safe. We, therefore, think the court erred in refusing to hold such propositions to be the law. By such refusal, it indicated that plaintiff's claim was properly denied if she did not acquaint the clerk with the approximate value of her jewelry delivered for safe keeping in a safe. This she was not required to do.

Testimony of the plaintiff as to the value of the jewelry was received in the form of a deposition. Some of it was largely hearsay in character, she appearing to have been informed by inquiry of jewelers as to such values, and many of the questions and answers designed to qualify her to testify as to values were technically incorrect and properly objected to. But whether competent or not, her estimate of the

value of all the jewelry lost was $3,225, a sum less than that given for one single piece by the jeweler from whom it was bought, whose qualifications to testify were not questioned. He placed the value of that piece at $4,000.

As most of the jewelry was purchased several years ago in different parts of the world, it is apparent that no better evidence of its value can be produced at another trial; hence the judgment will not only be reversed, but judgment will be entered here on the undisputed record showing damages to at least the amount she claimed—namely, $3,225 and costs.

*Reversed and judgment here.*