SAMUEL STOLL *vs.* THE ALMON C. JUDD COMPANY.

Third Judicial District, New Haven, June Term, 1927.

WHEELER, C. J., MALTBIE, HAINES, HINMAN AND BANKS, Js.

Section 4828 of the General Statutes provided that "whenever a guest of any hotel or inn shall fail to offer to deliver to the person in charge of the office of such hotel, for safekeeping, any securities, money, jewelry, watch or ornament belonging to such guest, the proprietor of such hotel shall not be liable for loss of any such property by such guest to an amount greater than one hundred dollars unless such loss shall occur through the negligence or misconduct of such proprietor or any of his employees; nor shall he be liable for the loss of any chattel belonging to such guest and not within a room assigned to him, unless the same shall be specially entrusted to the care of such hotel keeper or his servants." *Held:*

1. That, in so far as this statute purported to affect the legal relationship between an innkeeper and his guest, it modified the rigorous rule of the common law imposing absolute liability for every loss of goods unless caused by an act of God or the public enemy or the fault of the guest himself.

2. That the statute, being in derogation of the common law, must be strictly construed.

3. That the statute was intended to cover all goods of the classes therein enumerated, whether they constituted the "baggage" of the guest, i.e. articles for his personal use and convenience, or whether they were, as in the present case, merchandise carried by a traveling salesman for the purposes of his business.

4. That, in making a "delivery for safekeeping," a guest is not required to declare specifically the value of his property, but merely to indicate in a reasonable and intelligible manner his intent in depositing it, and to give such notice of its character that the innkeeper may know that it is valuable and to be safely kept and may be put upon inquiry as to any further information that he desires.

5. That in the present case the deposit by the plaintiff with the defendant's clerk of two bags or cases, both of which were closed and strapped, and one of which was locked, accompanied by the statement, "Now these are jewelry cases and we want them safely protected," was a delivery for safekeeping of the jewelry which they contained.

6. That if the loss occurred through the guest's, and not the innkeeper's negligence, the guest was not entitled to the sum of $100 which the statute fixed as the limit of recovery where there was neither negligence or misconduct on the part of the innkeeper.

7. That the measure of the plaintiff's damages for the loss of his jewelry was its market value, i.e., the price for which it was bought and sold (usually best established by sales in the ordinary course of business) at the place of the loss or the nearest available market; and that the defendant was in no position to complain of the trial court's instruction limiting the plaintiff's recovery to the cost of the jewelry to him at wholesale and ignoring the element of value based upon the price at which the plaintiff might have sold the goods at a profit to retail dealers.

Argued June 10th—decided August 3d, 1927.

ACTION to recover damages for the loss of jewelry, alleged to have been placed by the plaintiff in the care and custody of the defendant as an innkeeper, brought to the Superior Court in New Haven County and tried to the jury before *Nickerson, J.;* verdict and judgment for the plaintiff for $8,000, and appeal by the defendant. *No error.*

The plaintiff offered evidence to prove that he was a jobber, purchasing jewelry from the manufacturer and disposing of the same to the retail trade; on March 5th, 1925, he and his salesman, one Resnick, registered at and became guests in the defendant's hotel at Waterbury; after registering they delivered to the hotel clerk two bags or cases, each closed, fastened with a strap, and one locked, containing the plaintiff's stock of jewelry; the salesman stated to the clerk, "Now these are jewelry cases and we want them safely protected," to which the clerk replied, "Oh, I can see those are jewelry cases. We have plenty of jewelry men stopping here"; the clerk took the cases from the counter, at his direction Resnick wrote his name on two plain cards, the clerk then tore each card in half, gave Resnick one half of each card and put one of the other halves under the strap of each case; the next morning the plaintiff and Resnick presented the portions of the cards which had been so given them and requested delivery of the cases, but the defendant did not deliver and has never delivered the bags or their contents to the plaintiff.

The defendant offered evidence that neither the plaintiff nor Resnick made any mention of the nature of the contents of the bags at the time they were left at the desk and the clerk did not know that they contained jewelry; the clerk placed the bags behind the key rack in the rear of the office; subsequently one of two men who were sitting in the lobby but had not registered, gave to the clerk a traveling bag which the latter put on the floor near the safe, and one of these men, at another time, brought to the clerk another traveling bag which the clerk checked, using an ordinary perforated check with duplicate numbering, and placed it in the coat room; later, while the clerk was at the telephone, one of the men entered the hotel desk

enclosure and opened the bag which had been left by him and which was then on the floor near the jewelry cases; still later one of these men asked to have the bag brought from the coat room and put with the other bags, which was done. Early next morning the two men, who had eventually registered and been assigned rooms, approached the desk and asked the night clerk, who was not the clerk on duty during the evening before, for their bags, presenting the check, and pointing out and claiming the four stacked together on the floor, the two jewelry bags being on the bottom and the two others on top, one having the check corresponding to that presented. The white slips which were attached to the jewelry cases when plaintiff and Resnick left them were no longer so attached. The clerk accepted the check as sufficient and delivered all four bags to the men, who thereupon paid their bill and left the hotel.

*William W. Gager,* for the appellant (defendant).

*Nathaniel R. Bronson* and *Richardson Bronson,* for the appellee (plaintiff).

HINMAN, J. The general common-law rule is that it is the duty of an innkeeper to keep the goods of his guest safely so that no loss shall happen through his default or that of his servants or others for whose presence in the inn he is responsible, and if he is guilty of any breach of this duty he is liable to the party injured for the loss sustained. The rule had its origin at an early period and is said to have been founded on considerations of public policy, including the encouragement of intercourse between different sections of the country, the fact that travelers must of necessity trust to and confide in the honesty and vigilance of the

innkeeper and those in his employ, and because of his opportunity and temptation, then frequently yielded to, to collude with evil-disposed persons in despoiling his guests. Although in modern times this policy has been assailed as being without at least some of the justifications formerly obtaining, courts have been slow to be moved by this argument to materially relax the rigor of the rule; while admitting that modern innkeepers are generally trustworthy, they hold that to prevent, by continued strict accountability, new evils from springing up, is no less important than to suppress those which already prevail. By the vast majority of cases the innkeeper, in the absence of statutory modification of the common-law rule, is held to be practically an insurer as to the goods of his guest and is absolved from liability for their loss only when it results from the act of God, or is caused by the public enemy or by the fault of the guest himself. In some jurisdictions this rule is ameliorated to the extent that, although the innkeeper is made prima facie liable for the loss of goods by a guest, he may discharge himself by showing that such loss was not occasioned by his negligence or default. However, even in those cases which do not adhere to the strict rule that the innkeeper is an insurer of the goods brought by a guest, he is not usually exonerated from a loss of such goods by theft, on the ground that he guarantees the good conduct of the persons whom he admits under his roof and when goods are so lost, even though the person who stole them is unknown, the law imposes liability upon him. 14 R.C.L., Innkeepers, § 16 *et seq.;* 32 Corpus Juris, p. 545 *et seq.;* Beale on Innkeepers and Hotels, §§ 181 to 188.

In many States, however, statutes have been enacted, some merely declaratory of the common law, but most of them modifying, to some extent, the common-

law rule by limiting, or prescribing a mode of limiting, the liability of the innkeeper. See Appendix, Beale on Innkeepers and Hotels. In so far as these statutes are in derogation of the common law they are to be strictly construed. 32 Corpus Juris, p. 551, § 49; note, 99 A.S.R. 592. Connecticut was without legislation of this kind until 1915, when an Act (Chapter 98 of the Public Acts) was passed, which as § 4828 of the General Statutes was in effect when this cause of action accrued, and reads as follows: "Whenever a guest of any hotel or inn shall fail to offer to deliver to the person in charge of the office of such hotel, for safekeeping, any securities, money, jewelry, watch or ornament belonging to such guest, the proprietor of such hotel shall not be liable for loss of any such property by such guest to an amount greater than one hundred dollars unless such loss shall occur through the negligence or misconduct of such proprietor or any of his employees; nor shall he be liable for the loss of any chattel belonging to such guest and not within a room assigned to him, unless the same shall be specially entrusted to the care of such hotel keeper or his servants." It will be perceived that this statute works a considerable modification of the common-law liability of an innkeeper. The rights and liabilities of the parties are to be determined by these statutory provisions so far as they are applicable, and by the common law only as to those principles which remain unaffected by the statute.

While the assignments relate to claimed errors in the charge as given and in refusing to charge as requested, the points presented are, for the most part, reducible to concise questions. The appellant in its brief has so treated them, and a like method will be followed in this discussion.

The defendant conceded, by its first request to

charge, that it, as a hotel keeper, is liable for the loss
of goods of its guest, unless the loss is due to the act
of God, of a public enemy, or of the owner, except as
this liability is changed by statute, but claimed that at
common law such responsibility, while covering all per-
sonal property used by or suitable to the use of the
guest, does not extend to merchandise, such as is here
involved, which is intended to be sold by the guest
in the course of his travels. While it is held in one
State (Maryland), and there are intimations in a few
other cases, that liability may extend only to the
baggage of the guest, i.e., articles for his personal
convenience and use, the long-established and generally.
accepted doctrine is that the liability covers all per-
sonal property brought by the guest to the inn. 32
Corpus Juris, p. 549; 14 R.C.L. p. 522; Beale on Inn-
keepers and Hotels, § 191. Furthermore, we think that
our statute forbids a construction excluding merchan-
dise from its protection. It covers, in terms, "any
securities, money, jewelry, watch or ornament" belong-
ing to the guest and "any chattel belonging to such
guest." We are constrained to believe that if any
limitation of these general designations, dependent
upon the purpose for which such property is owned
or used, had been intended, it would have been ex-
pressed; certainly we can see no justification for
reading such a limitation into the existing statute.

The property here in question, jewelry, is within the
class of articles which, under the statute, the guest
must "offer to deliver for safekeeping" if recovery,
beyond $100, is to be had for its loss without negli-
gence or misconduct of the hotel proprietor or his
employee. The next inquiry is as to what constitutes
such delivery or offer to deliver as the statute con-
templates. The first proposition of the appellant—
that delivery of the locked case did not constitute de-

livery of the jewelry which it contained—merits scant discussion. The case mainly relied on—*Sawyer* v. *Old Lowell National Bank,* 230 Mass. 342, 119 N.E. 825— was one of gratuitous bailment, in which the bank with which a box was left for safekeeping was not informed, and there was nothing to indicate that it knew or ought to have known, that the box contained the will in question; and of the cases cited in the note thereto (1 A.L.R. 272) none are directly in point and most also concern gratuitous bailees and turn, not upon the inaccessibility of the contents of containers to inspection by the bailee, but failure of the bailor to disclose the nature of such contents, it being very reasonably held that the bailee, to be rendered liable, is entitled to know the nature of the contents and the consequent degree of care incumbent upon it. *Riggs* v. *Bank of Camas Prairie,* 34 Idaho, 176, 200 Pac. 118, 18 A.L.R. 83; *Waters* v. *Beau Site Co.,* 186 N.Y. Supp. 731.

It is also contended by the appellant that in order to constitute the requisite delivery for safekeeping, the guest must inform the custodian not only of the nature of the goods, but also as to their approximate value; that even if the nature of the property be imparted and, as here, is such as to signify that it is valuable and liable to loss by theft or otherwise, the guest must go further and volunteer a statement of its approximate value in dollars and cents. Of the confessedly few cases which are cited to this proposition, or which we are able to discover, one '(*Blake* v. *De Jonghe Hotel & Restaurant Co.,* 174 Ill. App. 129) was decided under a statute expressly requiring that the guest acquaint the innkeeper with the approximate value of the property deposited. In others, it appears that no information whatever was given as to the nature of the contents of the package, and none afford direct

authority for requiring a precise or approximate statement of the value, in the absence of a request therefor. *Horton* v. *Terminal Hotel & Arcade Co.,* 114 Mo. App. 357, 89 S. W. 363; *Bendetson* v. *French,* 46 N. Y. 266; *Whitehouse* v. *Pickett,* L. R (1908) App. Cas. 357, 12 Amer. & Eng. Anno Cas. 96; *Rubinstein* v. *Cruickshanks,* 54 Mich. 199.

It is necessary and proper that the intent of the guest to deposit property for safekeeping be brought home to the innkeeper in some reasonable and intelligible manner and that he should be given such notice of its character that he may know that it is valuable and to be safely kept, and regulate the extent of his care accordingly and with a view to the liability which would attach to him in case of loss. This was the substance of the court's charge on the subject of delivery for safekeeping and we consider that the instruction given accurately and adequately reflects and covers the fair import of the statutory provision in question. If this requirement be complied with, the innkeeper is thereby put upon inquiry as to further details of information if, for any reason, he desires them, including the amount, in value, involved in the deposit; but to require, in the absence of statutory provision to that effect, such a declaration of the amount in order to constitute a "delivery for safekeeping" is not warranted by any discernible consideration.

In the course of the charge the trial court instructed the jury, that if the loss of the property occurred through the combined negligence of the plaintiff and that of the defendant's employees the verdict should be for the plaintiff to recover the value of the jewelry lost to an amount not greater than $100. This is assigned as error on the ground that thereby the effect of contributory negligence of the plaintiff as a bar to recovery was limited to loss due to the defendant's negligence,

to the exclusion of its effect to also defeat recovery upon the liability of an innkeeper, as an insurer, though without negligence on his part. It is true at common law that if the loss is occasioned by the contributory negligence of the guest himself, the innkeeper is not liable therefor. Beale on Innkeepers and Hotels, § 223; 14 R.C.L., p. 533; 32 Corpus Juris, p. 546. There is nothing in our statute which abrogates or modifies this rule. The jury, therefore, properly should have been instructed to the effect that if the plaintiff's loss was occasioned by his own negligence, and there was no negligence on the part of the defendant, the plaintiff would not be entitled to recover from the defendant any damage for such loss, even to the extent of the $100 allowed by the statute when the loss occurs without negligence or misconduct of the hotel proprietor or his employees. Had the verdict been for $100 or less, evincing that the jury had not found negligence on the part of the defendant, a conclusion that the charge, as given, was harmful to the defendant would have been unavoidable. However, the amount of the verdict conclusively indicates that the jury found the defendant to have been negligent, and the effect of a finding of contributory negligence by the plaintiff in such a situation was repeatedly and accurately charged. The instruction complained of, while erroneous, worked no harm to the defendant.

As to damages, the court charged that the measure is "the value in the market open to the plaintiff at the time of the loss." In cases of this kind, the measure of damages is the market value of the property. 32 Corpus Juris, p. 550. The appellant claims that the charge was deficient in that the jury were not instructed that such market should be that open for the purchase of the goods at wholesale, at the place of loss or the nearest available place. Market value means, generally, the

price for which an article is bought and sold, and is ordinarily best established by sales in the ordinary course of business. *Sanford* v. *Peck,* 63 Conn. 486, 493, 494, 27 Atl. 1057; *Chany* v. *Hotchkiss,* 79 Conn. 104, 63 Atl. 947. If there is no market for the article at the place where the plaintiff would be entitled to compensation, the value at the nearest market governs. 1 Sedgwick on Damages (9th Ed.) § 246. It is found that the plaintiff's jewelry and bags cost him $7,510.41 in the wholesale market open to him and that it was commonly sold by the plaintiff to retailers at an advance of from fifty to sixty per cent. The trial court, in its charge, ignored the element of value based on the price at which the plaintiff might have sold the goods, of which the evidence afforded at least some general indication, and, in effect, instructed the jury that the plaintiff's maximum recovery would be the cost to him, at wholesale. The amount of the verdict rendered clearly shows that the jury adopted that theory. The charge given as to the amount recoverable was as favorable to the defendant as it was, or in any event would be, entitled to; it amounted to an instruction that the purchase price at wholesale should be treated as the market value, and the omission to include the consideration of the value for purposes of sale in the market available to the plaintiff for such sale, was advantageous, rather than prejudicial, to the defendant.

There is no error.

In this opinion the other judges concurred.