THOMAS GORMAN, APPELLANT, V. JOHN BRATKA, APPELLEE.

298 N. W. 691

FILED JUNE 13, 1941. No. 31062.

*David O. Mathews,* for appellant.

*Crofoot, Fraser, Connolly & Stryker, contra.*

Heard before PAINE, CARTER and MESSMORE, JJ., and ELDRED and TEWELL, District Judges.

PAINE, J.

This is an action for personal injuries suffered in an automobile accident. The jury returned a verdict for the defendant for $10 on his cross-petition, from which plaintiff, Thomas Gorman, appeals. A companion case, growing out of this same accident, is entitled *Gorman v. Bratka, ante,* p. 84, 296 N. W. 456, in which Mary Gorman, the wife of plaintiff in the case at bar, secured a verdict for $2,500, which was affirmed by this court in an opinion written by Judge Rose.

The plaintiff, Thomas Gorman, was 78 years of age, and had bought the 1937 Ford sedan for Marie Gorman Neiman, his married daughter, who lived at 5832 William street, with her husband, Clark Neiman, and their two children, some seven miles away from her parents, but the parents had never lived at their daughter's home.

Neither the plaintiff nor his wife had a driver's license. They had never driven this car, or any other, and it had always been kept at the home of the daughter, who was not a member of plaintiff's household, and the daughter and her husband supplied the oil, gas, and repairs for the car. At the time of the accident Mrs. Neiman, who had invited her father and mother to spend the day with her, was taking them from their home at Twenty-fourth and M streets out to her home.

The accident occurred about 9:30 a. m., November 28, 1938. The plaintiff was riding in the rear seat, and his wife, now deceased, was riding in the front seat with their daughter, Marie Neiman, who was driving the car.

It is charged that the defendant, while driving his 1935 Ford sedan in an easterly direction on Pine street in Omaha, entered the intersection at Sixtieth street in a grossly negligent and careless manner, and struck the car in which plaintiff was riding, inflicting serious personal injuries upon the plaintiff.

The specific negligence charged was in operating his car in excess of 40 miles an hour, failing to give the right of way to the car which had entered the intersection first,

and in failing to have his car under proper control, and other items of negligence were charged.

The defendant admitted the collision, but charged it was the result of negligence of plaintiff and the driver of his car.

In the motion for a new trial, three prejudicial errors of the trial court are set out, as follows:

"44. That the court erred in refusing to receive, and so ruling, in evidence, as an admission against interest and as a part of the plaintiff's case, exhibit No. 15, being a written statement of the defendant, John Bratka, dated November 28, 1938, and duly identified, proved and offered in evidence.

"45. That the court erred in refusing to receive, and so ruling, in evidence, as an admission against interest and as a part of the plaintiff's case, such parts of said exhibit No. 15, mentioned in the next preceding paragraph, as were not controverted or denied by the defendant, said exhibit having been duly identified, proved and offered in evidence.

"46. That the court erred in refusing to receive in evidence, and so ruling, as an admission against interest and as impeachment evidence, said exhibit No. 15, being the written statement of the defendant, John Bratka, dated November 28, 1938, when offered as a part of the cross-examination of the defendant Bratka, said exhibit having been identified, proved and offered in evidence; and in refusing the offer of proof made with respect thereto by the plaintiff as a part of the cross-examination of the said defendant, John Bratka."

The evidence discloses that Al Hummel, an insurance agent, whose home was in Boise, Idaho, at the time of the trial, called the defendant to his office in Omaha, some four hours after the accident, and asked him to give a statement of just what happened at the time of the accident. The defendant sat in a chair next to Mr. Hummel, who took down the statement on a typewriter, making one, and possibly two, copies. The statement reads as follows:

"Omaha, Nebraska    (Ex. 15)
November 28th, 1938.

"Report of John Bratka

"My name is John A. Bratka, I am 34 years old, married and I reside with my wife and one child at Tecumseh, Nebraska. I am in the grocery and meat business. On the 28th of November 1938 about 9 A. M. I had an accident while driving jy (my) 1935 Ford tudor. The accident happened at the intersection of 60th and Pine Streets in Omaha, Nebraska. The facts are as follows:

"I was driving the car and my wife and son, John D. age 3, were in the front seat with me. My sister-in-law, Mrs. Fred Sampson of Weeping Water, Nebraska was riding in the rear seat. We had spent the nite at Valley, Nebraska and we were just coming into Omaha when this accident occurred. We traveled off of our course and that is how the accident happened to happen where it did. We did not make any stop before this accident occurred.

"As I was going east on Pine Street I was going up a steep hill and I had my car in second gear. I was going about 15 or 20 miles per hour as I was going up the hill. I hesitated before crossing 60th street but I did not bring my car to a stop. There are no stop or slow signs at this intersection.

"All of a sudden I collided with a car which was going north on 60th Street. I did not see this car until we collided. I could not say how fast this car was going since I did not see it until we collided.

"The right front fender of my car collided with some part of the other car but I do not know what part. After the first impact the other car rolled over and landed on its wheels.

"After the accident the other car was about two or three feet to the north of the north curb of Pine Street and it was headed to the west. My car was up over the curb on the northeast corner of the intersection just southeast of the fire hydrant; just the front wheels of my car were up over the curb.

"A Mrs. C. W. Neiman was driving the other car and her mother and father, Mr. and Mrs. Thomas Gorman were in the car with her. Mr. and Mrs. Gorman were injured but they were conscious. We took Mrs. Gorman into a grocery store and she complained of her heart bothering her. Mr. Gorman was cut on the forehead.

"I was the only one in my car who received any injury at all. I have a bump on my left knee but I have not consulted a doctor. I am able to go about. My knee is not cut. Neither my wife, son or sister-in-law were injured in any way in this accident. Mr. and Mrs. Gorman were taken to the St. Joseph Hospital in an ambulance.

"When the two cars came together they were in the northeast quarter of the intersection. There was dirt in the northeast quarter of the intersection which was probably knocked off my car.

"This is a clear intersection and there is nothing on the southwest corner which obstructed my view.

"Before I started across the intersection I looked and the way appeared to be clear. I do not know where this car came from.

"The weather was clear and the pavement was dry at the time of the accident.

"I have read the above report and it is true and correct.

"Correction: My son was riding in the rear seat with my sister-in-law instead of the front seat as mentioned above.

"I have read the above report and it is true and correct.

"(Signed) John A Bratka"

The defendant, John Bratka, in direct evidence testified that he looked down Sixtieth street and could see Mrs. Neiman's car coming, and that it was going 35 or 40 miles an hour, and he put on his brakes and swerved to avoid hitting it.

Now, in this exhibit No. 15, which was offered on cross-examination, he made this statement: "I could not say how fast this car was going since I did not see it until we collided." And again: "Before I started across the intersection I looked and the way appeared to be clear. I do not

know where this car came from." Exhibit No. 15 was made and signed by defendant Bratka on the day of the accident, November 28, 1938, when the incident was fresh in his mind, while his testimony was given in the trial beginning January 19, 1940. They differed vitally on an important point in the controversy.

In laying the foundation for the introduction of this exhibit No. 15, defendant admitted the fact that he was called to Mr. Hummel's office, and admitted he gave him a statement of what happened, and said that Mr. Hummel sat at the typewriter and typed it, and read it to him, and he identified his signature at the bottom of the exhibit; then the plaintiff offered exhibit No. 15 in evidence, signed by Bratka, as a part of his cross-examination.

This exhibit was properly identified and offered, and the refusal of the trial judge to receive it in evidence is charged as prejudicial error. "Any statement made by a party to an action which is against his own interest and which, in its nature, tends to establish or disprove any material fact, or alleged material fact, in the case is competent to be put in evidence against him in the trial of that action." 20 Am. Jur. 460, sec. 544.

In *Mason v. Reynolds,* 135 Neb. 773, 284 N. W. 257, this court said: "Plaintiff then laid a foundation for the introduction of exhibit No. 1, being a typewritten statement, signed by this witness. He admitted making a statement in attorney Deakins' office a few days after the accident, and admitted it was his signature at the bottom of exhibit No. 1, just above the line reading 'I have read the above and it is true.'" This court held that refusing to admit this exhibit was prejudicial error which required a reversal of the case. 4 Wigmore, Evidence (2d ed.) 553; 22 C. J. 303; *Gentry v. Burge,* 129 Neb. 493, 261 N. W. 854; *Young v. Avery Co.,* 141 Minn. 483, 170 N. W. 693; *Burgess v. Burgess,* 44 Neb. 16, 62 N. W. 242; *Fremont Butter & Egg Co. v. Peters,* 45 Neb. 356, 63 N. W. 791; *Falkinburg v. Inter-State Business Men's Accident Co.,* 132 Neb. 670, 272 N. W. 924.

Complaint is made by plaintiff of instruction No. 12

given by the court, and reading as follows: "You are instructed that Marie Neiman, in driving the plaintiff's automobile, was his agent, and that any negligence or contributory negligence upon her part is directly chargeable to the plaintiff in this action."

May we examine the evidence in regard to the question whether Mrs. Marie Neiman was the agent of her father, the owner of the car at the time of the accident, as charged by the court in this instruction?

The plaintiff herein was about 78 years of age when the accident happened in 1938. His vision was not good in excess of 30 feet. He had never driven a car in his life, but for some 20 years he had been in the habit of buying one automobile after another and giving them to his daughter, Mrs. Neiman. She and her husband used them exclusively. They had bought all necessary gas, oil, tires, and repairs for this car. From the day this last car was purchased, it was kept in their garage at the family home of Mrs. Neiman and her husband. The court refused to permit it to be shown in evidence that they paid the taxes and purchased the license under which the car was operated.

The plaintiff had no garage at his apartment, and had never had possession of the car from the day it was bought. For the past 14 years Mrs. Neiman and her husband had lived in one apartment and plaintiff and his wife in another, some seven miles away. She was not a member of the plaintiff's household.

In *Mogle v. A. W. Scott Co.*, 144 Minn. 173, 174 N. W. 832, the court said: "The owner of an automobile, who loans it to another to use for purposes personal to the borrower, is neither master nor principal, but merely a bailor, and in law is not chargeable with the consequences of the borrower's negligence while pursuing his own ends in his own way." See, also, *Ebers v. Whitmore*, 122 Neb. 653, 241 N. W. 126; *Hogg v. MacDonald*, 128 Neb. 6, 257 N. W. 274. The *Hogg* case gave three elements required to make the family doctrine apply, none of which exists in the case at bar:

"Rules for determining the existence of the family relation, as contemplated by law, were adopted by the supreme court of Texas as follows:

"'1. It is one of social status, not of mere contract.

"'2. Legal or moral obligation on the head to support the other members.

"'3. Corresponding state of dependence on the part of other members for their support.' *Roco v. Green,* 50 Tex. 483."

This trip was suggested by the daughter to her parents. Plaintiff was a rear seat passenger in response to a specific invitation. In 5-6 Huddy, Cyclopedia of Automobile Law, 280, it is said: "Even the owner of the vehicle may in some cases be considered a guest of the driver so that the driver's negligence will not be imputed to him." See, also, *Rodgers v. Saxton,* 305 Pa. St. 479, 158 Atl. 166, 80 A. L. R. 280; *Williamson v. Fitzgerald,* 116 Cal. App. 19, 2 Pac. (2d) 201; *Hartley v. Miller,* 165 Mich. 115, 130 N. W. 336; *Hathaway v. Mathews,* 85 Cal. App. 31, 258 Pac. 712; *Loso v. Lancaster County,* 77 Neb. 466, 109 N. W. 752.

"A man may, however, be a guest in his own automobile, and an owner, who, although present in his car while it is being driven by another not his agent, is present merely as a guest, and has no control of the machine, which is not being used in the furtherance of his business or undertaking, is not liable, in absence of any statute imposing liability for the negligence of such person in operating it." 5 Blashfield, Cyclopedia of Automobile Law and Practice (Perm. ed.) sec. 2930.

Many cases are cited in defendant's brief where sons or daughters who live with the parent, and have driven the parent in his own car, are held to be the agent or servant of the father, but so far as we have examined these cases, not one of them presents a similar situation between father and daughter as existed in the case at bar.

In our opinion, Mrs. Neiman was not the agent of the plaintiff at the time of the accident, and it was error for the court to so instruct the jury in instruction No. 12, for under the circumstances she was a mere bailee.

For the errors set out herein, the judgment is set aside, and cause remanded for a new trial.

REVERSED.