LENA SNYDER, APPELLEE, V. HOMER E. RUSSELL ET AL., APPELLANTS.

1 N. W. (2d) 125

FILED NOVEMBER 28, 1941. No. 31195.

*Fred N. Hellner* and *Fischer, Fischer & Fischer*, for appellants.

*Gray & Brumbaugh, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER, MESSMORE and YEAGER, JJ.

PAINE, J.

Plaintiff, a pedestrian, brought suit against the two defendants for personal injuries sustained by her when struck by an automobile as she was about to board a street car. The jury returned a verdict against each of the defendants for $4,000, and the defendants appeal.

The accident happened at the northwest corner of Twentieth and Paul streets in Omaha, about 8 o'clock on the evening of December 9, 1939. The plaintiff lived in an apartment in the Fontenelle Project, located near this intersection. She came out of her apartment to board a street car, having an appointment with her brother down-town, She was standing on the curb, and the light from a grocery store, as well as the light from the approaching street car, made it easy to see her. Suddenly an automobile, which had been following the street car, darted out to pass the street car, and the plaintiff was struck by the headlamp and bumper and thrown about 27 feet, alighting between the north and south-bound street car rails. The driver had put on the brakes hard, but the automobile skidded along, and was finally brought to a stop 25 or 30 feet beyond where the plaintiff was lying in the street.

The automobile was driven by Miss Luella Wagner, who owned and conducted a beauty shop at Twentieth street and Ames avenue. The night before the accident she had been at the apartment No. 2, Drake Court, of defendant

Homer E. Russell, and he planned to have a card party the next night, and invited Mr. and Mrs. Fierman to come, and invited Miss Wagner to come too, and when she said that she might have some late appointments on Saturday night, he testified in answer to the question, "What did you say to her?" "I told her that I had an extra car out there that if she wanted to take it she was entirely welcome to it."

It seems she drove the car home that night, having driven cars for ten or twelve years, and when she had finished her appointments on Saturday night she was driving back to his apartment to attend the card party when the accident occurred.

Homer E. Russell, a widower, was a carpenter, regularly employed at the Ak-Sar-Ben, and some time before the accident had traded his Plymouth coupé for a new car with Andrew Murphy & Son, and they had a chance to sell his old car, and sent out the Dodge sedan, transferred his license plates to it, and told him to drive it until they got in a new car for him.

Mr. Russell testified that he had met Miss Luella Wagner at the Shrine circus at the Coliseum in the spring of 1939, and began keeping company with her, but that they were not engaged on the night of the accident. He testified that immediately after the accident that night he was called on the telephone by Miss Wagner, and went out at once to the scene of the accident; that he gave a slip of paper to a man there, with his name and address, in care of the Ak-Sar-Ben den, Sixty-third and Shirley streets, and the numbers of his office and residence telephones, and talked to the police there, telling them that it was his car. On January 19, 1940, Mr. Russell married Miss Wagner. The amended petition, filed May 10, 1940, was against Homer E. Russell and Luella W. Russell as defendants.

The plaintiff testified that she had not seen the automobile following the street car, and the screech of its brakes caused her to turn around and see the headlights just an instant before she was struck. She was standing on the curb two or three feet from the street car tracks, and was

taken in an ambulance to the hospital, and four days later was taken home in a wheel chair.

Dr. Werner P. Jensen, a city physician, was called to the hospital about 8 o'clock the night of the accident, and examined her in the emergency room, and found she had multiple bruises and abrasions and injury to her back; she had a brush burn on her forehead, and a tuft of hair had been torn away, abrasions on her nose and under her right eye; she had bruises and burns on her right elbow and wrist and little finger; she had pain in her neck on attempting to move her head. There was a large black and blue area on her right hip and left buttock, being a round imprint just the size of the headlight of a car. Her right leg was black and blue, her right ankle swollen, and there were abrasions on the inner side of her left ankle where the skin had been torn. He cleaned all of these abrasions, and applied anti-septic dressings. X-rays were taken of her pelvis and lumbar spine, but no fractures were shown. The muscles and ligaments of her back were painful, and were taped. She ran some fever, due to absorption of blood from the large black and blue areas where she was hit. At the end of four days she was allowed to go home. He called at her home some three times, and afterwards she called at his office, coming there by car or taxi, some nine times.

The plaintiff before the accident was working on W. P. A. as a housekeeping aid. She would go as directed to some poor family, and do "the heavy laundry, washing and iron-ing, housework, cleaning and cooking," where they needed work done because of sickness, for which she received $57.50 a month. After she recovered and began work, she was unable to do this heavy housework and laundry work, and the W. P. A. gave her lighter work when she went back on March 19, 1940.

The errors relied upon for reversal consist of objections to the giving of certain instructions by the court on its own motion, and because the court refused to give in-structions Nos. 1, 2 and 3 requested by the defendant Homer E. Russell, and for the refusal to sustain the motion of

Homer E. Russell to enter a judgment in his favor, notwithstanding the verdict against him. It is also charged that the court erred in refusing to grant a new trial for newly discovered evidence, and the final error relied upon for reversal is that the verdict is grossly excessive.

The issue in regard to agency was as follows: It was alleged in the second paragraph of the amended petition that "Said defendant, Luella Russell, at the time of said collision, was operating said car for and on behalf of and as the agent of said Homer E. Russell."

Homer E. Russell filed a separate answer to said amended petition, in which he "specifically denies that the said Luella W. Russell, formerly Luella W. Wagner, was acting as his agent on the 9th day of December, 1939."

"Agency may result from a contract between the parties or it may result from a direction by a person to another to act on his account with or without a promise by the other so to act and with or without an understanding that the other is to receive compensation for his services if he does act." 1 Restatement, Agency, sec. 16, comment *a*.

"A person conducting an activity through servants or other agents is subject to liability: (a) If he is negligent in the conduct of such activity; or (b) if he permits his servants or other agents to act negligently upon his premises or with his instrumentalities." 1 Restatement, Agency, sec. 213.

When motion for a directed verdict in his behalf was refused, Homer E. Russell tendered instruction No. 1, which was refused by the court, and read as follows:

"You are instructed that in order to find for the plaintiff and against the defendant, Homer E. Russell, you must find that the plaintiff has established by a preponderance of the evidence the following facts:

"1. That the car was owned or under the control of the defendant, Homer E. Russell.

"2. That Luella Wagner was acting as defendant Homer E. Russell's servant or agent.

"3. That at the time of the accident Luella Wagner was acting with Homer E. Russell's knowledge and direction.

"You are instructed that if the plaintiff has failed to prove any of these three matters by a preponderance of the evidence, then you shall find for the defendant, Homer E. Russell."

An owner of a car, who is not present and who has no control of the machine, which is not being used in furtherance of his business or undertaking, is not liable in the absence of any statute imposing liability for negligence. See 5 Blashfield, Cyclopedia of Automobile Law and Practice (Perm. ed.) sec. 2930.

Where the owner of an automobile loans it to another for purposes of his own, and not for the purposes of the owner, the owner is not ordinarily liable for the negligence of the bailee. *Jones v. Harris,* 122 Wash. 69, 210 Pac. 22, 22 Negligence and Compensation Cases Ann., 36; Berry, Automobiles (3d ed.) sec. 1040; *Zeeb v. Bahnmaier,* 103 Kan. 599, 176 Pac. 326, 2 A. L. R. 883; *Gorman v. Bratka,* 139 Neb. 718, 298 N. W. 691.

"The owner of an automobile, who loans it to another to use for purposes personal to the borrower, is neither master nor principal, but merely a bailor, and in law is not chargeable with the consequences of the borrower's negligence while pursuing his own ends in his own way." *Mogle v. A. W. Scott Co.,* 144 Minn. 173, 174 N. W. 832.

This court has held that, when a truck was borrowed by the driver during the noon hour to get his watch which was being repaired, the truck was not being used in the service of the owner, but for the personal convenience of the driver. *Ebers v. Whitmore,* 122 Neb. 653, 241 N. W. 126. See, also, *Wise v. Grainger Bros. Co.,* 124 Neb. 391, 246 N. W. 733.

A plaintiff must show that the driver of the car is the agent, servant, or other employee of the owner, and was at the time operating or driving the same in the service of the owner. *Dirks v. Ensign Omnibus & Transfer Co.,* 107 Neb. 556, 186 N. W. 525.

Mrs. Eva Hedglin, a prospective purchaser of an automobile, had a car turned over to her for the sole purpose of

trying out the car. While driving it on the highway, unaccompanied, she collided with another automobile. Plaintiff contended that the relationship of master and servant existed between the firm which owned the automobile and Mrs. Hedglin at the time of the accident. This contention was rejected by this court on the ground that she was not an agent of the defendant company, but merely a prospective purchaser, and that the essential elements were entirely lacking. *Werner v. Johnson,* 122 Neb. 870, 239 N. W. 207.

In an Omaha case, Arthur Brandeis' family borrowed Emil Brandeis' car, with chauffeur. While the chauffeur was returning the car to the garage, a collision occurred, which injured the plaintiff, Neff. It was held by this court that at the time of the accident no such relation of master and servant or of principal and agent existed between the owner of the car and the chauffeur as would render said defendant liable for such injuries, and the judgment of the district court was reversed and the case was remanded. It is said in the text that one cannot infer "that the chauffeur, whose negligence was the cause of the accident, was at that point of time the servant of the defendant and under his control," and that "such an inference is too far fetched and is not warranted by the evidence." *Neff v. Brandeis,* 91 Neb. 11, 135 N. W. 232.

The evidence in the case at bar discloses that the card party to be held at Homer E. Russell's apartment on the night of the accident was not a joint enterprise. There is no evidence but that it might have been a game to be played by three people as well as four. It is also shown that he permitted Luella Wagner to take his car for her own convenience; that she acted independent of any suggestions or directions from him; that she drove the car over the route and at the speed she desired, and was not in any way subject to his direction, control, or management. He had simply given her permission to use his car if she desired. There was no definite time fixed at which Luella Wagner was expected to be there. The accident occurred at about 8 o'clock, and Luella Wagner telephoned to Homer E.

Russell, and he immediately drove from his apartment to the scene of the accident, left his name and telephone number, and returned to his apartment around 9 o'clock, which was before the Fiermans arrived.

The record shows the following motion: "Mr. Fischer: Comes now the defendant, Homer E. Russell, at the close of all of the evidence, and separately moves the Court for a dismissal of this action as to him, or, in the alternative, to direct a verdict for him, for the reason that the plaintiff has utterly failed to prove either the agency of Luella Russell, or to prove any scope of employment, and has failed to prove that the defendant, Luella Wagner Russell, was acting within the scope of such employment."

This motion should have been sustained by the court, and the action should have been dismissed as to Homer E. Russell.

We will now consider the charge of defendant that the verdict of $4,000 is so grossly excessive as to shock the conscience of the court.

While the amount asked for in the prayer of the petition is usually immaterial, still the defendant calls our particular attention to the fact that the jury gave the plaintiff all she prayed for in her petition, which is claimed to be unusual.

The injuries of the plaintiff, while painful at the time, were soon healed. No bones were broken, and in four months she continued her work with the W. P. A. It is the opinion of this court that the verdict of the jury in the case at bar was excessive, and must have been influenced by passion or prejudice.

It is directed that the action as against Homer E. Russell be dismissed. The judgment against Luella W. Russell is set aside, and the cause is remanded for a new trial.

REVERSED.