CLARA C. PIECHOTA, ADMINISTRATRIX OF THE ESTATE OF VIRGINIA PIECHOTA, DECEASED, APPELLEE, V. CARL RAPP ET AL., APPELLANTS.

27 N. W. 2d 682

Filed May 29, 1947. No. 32225.

*Davis & Vogeltanz* and *Kirkpatrick & Dougherty,* for appellants.

*H. G. Wellensiek* and *Donald H. Weaver,* for appellee.

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER, CHAPPELL, and WENKE, JJ.

SIMMONS, C. J.

This action is brought under the provisions of sections 30-809 and 30-810, R. S. 1943, to recover damages for the death of a 17-year-old girl. Plaintiff is the mother of the deceased. Defendant John Rapp was the owner of the car and father of defendant Carl Rapp, the driver of the car. Issues were made and trial to a jury had, resulting in a verdict and judgment for the plaintiff

against both defendants. Defendants appeal. We reverse the judgment of the trial court and remand the cause.

The accident happened about one a. m., July 4, 1945, on a black-top highway in Ashton, Nebraska. Approaching the scene of the accident there was a slight turn to the right in the highway and then a sharp turn to the left. The car, following a curved course, went off the highway and struck the corner of a building, wrecking the car, and causing the instant death of the decedent.

Plaintiff sued as administratrix of the estate in a petition filed April 27, 1946, and alleged that she was sole and only next of kin. Plaintiff charged negligent and careless operation in several particulars. Summarized, they were that defendant operated the car while under the influence of intoxicating liquor and was grossly negligent. Relying on the family purpose doctrine, defendant John Rapp was joined as the owner of the car.

Defendant John Rapp answered, admitted that plaintiff was administratrix, denied generally, and alleged that deceased was riding in the car as the guest of Carl Rapp; that defendant Carl Rapp had reached his majority and was not a member of defendant John Rapp's family; and that the car was not being used on any business of defendant John Rapp and not for a family purpose.

Defendant Carl Rapp answered, admitted that plaintiff was administratrix, denied generally, and alleged that the deceased was a guest and that he was not on a joint enterprise with deceased. These answers were filed August 6, 1946.

A reply was filed August 17, 1946, to these answers, denying new allegations not consistent with the petition.

The cause came on for trial September 18, 1946. At the opening of the trial defendants asked leave to file an amended answer setting up the defenses of assumption of risk, contributory negligence, and joint enterprise. Plaintiff objected. The trial court denied leave to file the amended answer on the ground that the change of

issues might result in a delay of the trial. The matter went to trial on the issues as made.

At the time of the hearing on motions for new trial, which were based in part on the refusal to permit the filing of an amended answer, evidence was offered that on Friday, September 13, 1946, additional counsel for defendants entered the case; that they then advised plaintiff's counsel that leave would be asked to file an amended answer setting up these defenses; that plaintiff's counsel advised defendants' counsel he would object; that the proposed amended answer was not submitted to plaintiff's counsel until the morning the case was for trial; and that court was open on the day of September 17, and no effort then was made to secure leave to file. Plaintiff's counsel was present in court that day. Defendants' first assignment of error is that the trial court erred in denying defendants the right to file the amended answer.

For errors, to be discussed later herein, the judgment must be reversed and the cause remanded. It is proper for the trial court within its sound discretion to allow amendments to the pleadings where, without any specific directions, the cause has been remanded generally. 5 C. J. S., Appeal and Error, § 1969 (d), p. 1522; 3 Am. Jur., Appeal and Error, § 1241, p. 737; State ex rel. Davis v. American State Bank, 115 Neb. 81, 211 N. W. 201; Markel v. Glassmeyer, 137 Neb. 243, 288 N. W. 821. Accordingly, we do not deem it necessary to determine whether or not the trial court erred in denying permission to file the amended answer.

Defendants' next assignment of error is that the trial court erred in instructing the jury that if they found the defendant Carl Rapp liable, then the defendant John Rapp was liable as owner of the car under the family purpose doctrine. We have followed the family purpose doctrine. In Linch v. Dobson, 108 Neb. 632, 188 N. W. 227, we held: "Where the head of a family has purchased or maintains a car for the pleasure of his family, he is,

under the so-called 'family purpose' doctrine, held liable for injuries inflicted in the negligent operation of the car while it is being used by members of the family for their own pleasure, on the theory that it is being used for the purpose for which it is kept, and that in operating it the member of the family is acting as the agent or servant of the owner." There is no question but that the car here involved was maintained for a family purpose. The question comes, was defendant Carl Rapp a member of the family of the defendant John Rapp within the scope of that doctrine?

The defendant Carl Rapp is an adult, unmarried son of the defendant John Rapp and was 26 years of age at the time of the accident. He left home in 1939 and went to California where he secured employment and where he had been living. He had been employed as a locomotive fireman on the Southern Pacific Railroad for three years prior to his visit home. He came home for a visit about June 1, 1945. He ate, slept, and lived at the home of his parents. He paid nothing for these accommodations. He was treated as a son in the home and reciprocated to his parents in kind. While home he drove the car when and as he wanted with his father's consent. He intended to leave for the return trip to California the morning of July 4. On the evening of July 3, he took the car with his father's knowledge and consent, and drove to Farwell to visit relatives. Another man accompanied him. While there he went to a wedding dance, met the deceased, and agreed to take her and another girl home to Ashton. The accident followed on the return trip. Sometime during the latter part of July, he returned to California.

In Hogg v. MacDonald, 128 Neb. 6, 257 N. W. 274, we adopted and followed the following rules for determining the existence of the family relation under the family purpose doctrine:

" '1. It is one of social status, not of mere contract.

" '2. Legal or moral obligation on the head to support the other members.

" '3. Corresponding state of dependence on the part of other members for their support.' " See, also, Gorman v. Bratka, 139 Neb. 718, 298 N. W. 691.

In Creaghead v. Hafele's Administrator, 236 Ky. 250, 32 S. W. 2d 997, the court was presented with a case essentially similar in facts to the instant case. There an adult daughter, self-supporting, residing in another state, while spending her vacation at home was using her father's car with his consent for her own purposes. She was involved in an accident resulting in the death of a child. The court held that the father was not liable under the family purpose doctrine, stating that the father "was under no obligation, moral or legal, to support her, and at the time of the accident she was merely a visitor in his home," and the fact that the car was being used for the purpose of the daughter with the consent of the father was not sufficient to establish liability. See, also, Scott v. Greene, 242 Ill. App. 405; Jones v. Golick, 46 Nev. 10, 206 P. 679; McGee v. Crawford, 205 N. C. 318, 171 S. E. 326; Cole v. Wright (Tex.), 18 S. W. 2d 242; Adkins v. Nanney, 169 Tenn. 67, 82 S. W. 2d 867; Miracle v. Cavins, 254 Ky. 644, 72 S. W. 2d 25.

We are of the opinion that the evidence is insufficient to show that the defendant Carl Rapp was a member of the family of defendant John Rapp within the scope of the family purpose doctrine. The trial court erred in instructing the jury that under the family purpose doctrine, if they found the defendant Carl Rapp liable, they should also find the father liable.

Defendants next assign as error the admission of evidence of the sheriff as to speed based on experiments conducted by him. The sheriff testified as to having made experiments as to speed on curves and as to one that he had conducted on this particular curve a week or two after the accident. He was a driver of experience

and was well acquainted with this road. The car involved in this accident was a Chevrolet. The sheriff used a Dodge car which was "about the same class of car." The road was in the identical condition. The sheriff was allowed to testify that he drove around the curve at a speed of 45 miles per hour. He later was asked if, from his experience, from his examination of the highway, from the pictures taken, and from the impact of the car, he had an opinion as to the minimum speed that the defendant's car must have been traveling when it went around the curve. He answered that he had. He then was asked, "What, in your opinion, would be the minimum speed that a car would have to be traveling, in order to make the skid-marks as you saw them there on the highway?" He answered, "Approximately 60 miles per hour." All of this evidence was admitted over objection. The "skid marks" were marks made on the pavement by the right wheels of the car before it left the pavement.

In Crecelius v. Gamble-Skogmo, Inc., 144 Neb. 394, 13 N. W. 2d 627, we said: "With regard to the matter of admission of evidence of experiments this court has said: 'While experiments are sometimes admitted to illustrate a given subject, we are not aware of any rule that permits onlookers to testify as to the result, without laying the foundation and showing that the result of the experiment can be relied on as a substantive fact. This means that, as a foundation for this testimony, it must be shown that the person who makes the experiment is competent to do so; that the apparatus used was of the kind and in the condition suitable for the experiment, and that the experiment was honestly and fairly made. Without these facts established, "the result" is without probative force.' "

In this instance the plaintiff was undertaking to establish the speed of the car. The sheriff made an experiment from which it could be concluded that the curve could be safely driven at 45 miles per hour. The

sheriff knew the road, was obviously watching it, and driving the car for the purpose of conducting an experiment. According to the plaintiff's witnesses the defendant Carl Rapp knew the road slightly, and was driving while under the influence of intoxicating liquors. We find in this record no testimony that would qualify the sheriff to testify as to the speed of a car based on skid marks. The conclusion that the jury could draw from this testimony was that the defendant Carl Rapp must have been driving in excess of 60 miles an hour when he came to the curve. As we view it, the evidence was inadmissible and its reception prejudicial. See Nelson v. Hedin, 184 Iowa 657, 169 N. W. 37; Everart v. Fischer, 75 Ore. 316, 321, 145 P. 33, 147 P. 189; Shams v. Saportas, 152 Fla. 48, 10 S. 2d 715.

Defendants' next assignment of error goes to the admission over objection of evidence as to future earning capacity. The deceased was·17 years of age and a graduate of Ashton High School. Plaintiff called as a witness the county superintendent of schools. He testified that Ashton was a Class "B" school; that a graduate of Ashton High School in order to teach school was required to pass a teacher's examination as prescribed by the state, and had to have 12 hours of college work; that teachers were needed in Sherman County; and that the salary range was from $105 to $150 a month for 9 months.

In Gill v. Laquerre, 51 R. I. 158, 152 A. 795, a father testified that he intended to educate his child to become a school teacher (no such testimony appears here); teachers were called to testify as to their earnings and the amount they were able to save after paying their living expenses. The testimony was held inadmissible. The court said: "Parents may influence but they cannot always determine the occupation of their children and such testimony injects further uncertainty into a case already replete with uncertainties." The admission of this evidence allowed the jury to calculate the plaintiff's .

damages upon a purely speculative, uncertain, and conjectural basis. Its admission was prejudicial error.

The defendants' next assignment goes to the admission of other evidence.

The plaintiff is an unmarried woman. The deceased was born out of wedlock. Deceased lived all her life with plaintiff's mother at Ashton. Plaintiff was employed at Loup City. Plaintiff testified that she paid her mother for the keep of deceased; that deceased helped with the housework. On redirect plaintiff was asked if her mother was dependent upon her for support, and answered, over objection, that she was. If, as plaintiff testified, the grandmother was dependent on the mother, then to the extent the deceased helped in the care of the grandmother, she was assisting the plaintiff. Plaintiff lost that assistance. We see no prejudicial error in the admission of the challenged evidence.

The defendant John Rapp complains of the admission of the following exhibits in evidence over objection: A complaint filed in district court charging the defendant Carl Rapp with willfully and unlawfully driving an automobile in such a manner as to indicate a willful and wanton disregard for the safety of persons and property; the record showing a plea of guilty to the charge of reckless driving; the judgment record showing the assessment and payment of a fine; a receipt of the county treasurer for the amount of the fine, and the receipt issued to counsel for the fine and costs. The defendant Carl Rapp assigns as error the introduction of the judgment record and the two receipts. The record shows that appearance and plea were made by counsel for defendant Carl Rapp. The correct rule is: "A plea of guilty entered by the defendant in a criminal action may be used against him as an admission that he committed the acts charged against him, in any subsequent action to which he is a party and which involves the same subject-matter." Wisnieski v. Vanek, 5 Neb. Unof.

512, 99 N. W. 258. Under this rule only the plea of guilty was admissible.

Defendants' next contention is that the mother is not the "next of kin" under the provisions of section 30-810, R. S. 1943, which authorizes the action "for the exclusive benefit of the widow or widower and next of kin," and that by reason thereof plaintiff cannot recover. The testimony of plaintiff is that the deceased was an only child; that plaintiff had never married; and that no man had ever acknowledged in writing that he was the father of deceased. We construed the phrase "next of kin" in Warren v. Englehart, 13 Neb. 283, 13 N. W. 401, as comprehending "all those persons who are entitled to inherit personalty under the statutes of descent and distribution." In Fitzgerald v. Donoher, 48 Neb. 852, 67 N. W. 880, we said: "Under this statutory law in relation to damages the right of any party thereto is dependent upon the degree of kinship to the deceased, which must be such as to confer the right to inherit the estate." Section 30-110, R. S. 1943, provides: "If a child born out of wedlock shall die intestate, without lawful issue, his estate shall descend to his mother, or, in case of her decease, to her heirs at law." Here there is no question raised but that the deceased died intestate and without issue. The mother is within the term "next of kin" as used in the statute.

Defendants contend that the trial court erred in permitting a doctor to testify over objection that alcohol dulls the senses, slows the reflexes and befuddles the intellect, depending on the amount consumed and the tolerance of the person who has imbibed. There was evidence tending to show that defendant Carl Rapp had imbibed intoxicating liquor. Defendants' contention is that this was a matter of common knowledge, of which court and jury could take judicial notice. That a matter is judicially noticed means merely that it is taken as true without the offering of evidence by the party who should ordinarily have done so. 9 Wigmore, Evidence

(3d ed.), § 2567, p. 535. It has no other effect than to relieve one of the parties of the burden of resorting to the usual forms of evidence. Ohio Bell Telephone Co. v. Public Utilities Commission, 301 U. S. 292, 81 L. Ed. 1093, 57 S. Ct. 724. If, as defendants contend, the matter involved was one of which judicial notice could be taken (a matter which we do not decide), then the plaintiff by offering evidence assumed a burden which she did not carry, and made an issuable fact out of it. We do not see where defendants are prejudiced. There is no merit in the assignment.

Defendants contend that the trial court erred in giving certain instructions and in refusing to give certain requested instructions. Defendants also contend that in any event the verdict is excessive. Having reached the conclusion that, for the errors determined herein, the judgment must be reversed and the cause remanded, we do not deem it necessary to determine these assignments.

The judgment of the district court is reversed and the cause remanded.

REVERSED AND REMANDED.