# ASA G. BRIGGS, SPECIAL ADMINISTRATOR, SUBSTITUTED FOR FREDERICA T. THOMES, DECEASED, v. KENNEDY MAYONNAISE PRODUCTS, INC. AND ANOTHER.[1]

No. 32,501.

January 31, 1941.

*Keyes, Pardee, Solether & Carr,* for appellant.
*Briggs & Briggs,* for respondent.

PETERSON, JUSTICE.

This action was begun by Frederica T. Thomes as a stockholder of the defendant corporation. Frederica died before the trial, and her personal representative was substituted as plaintiff.

The amended complaint, among other things, alleged grounds for her bringing the action as the representative of the corporation, and a cause of action in favor of the corporation against the defendant Charles B. Thomes. No question is raised here as to the right of Frederica to bring the action in her representative capacity. She alleged as a cause of action in favor of the corporation against Charles B. Thomes that he was the president and in control of the corporation; that he had wrongfully withdrawn large sums of money belonging to the corporation which he appropriated to his own use; that he was about to dispose of certain

secret formulas, the trade-mark and trade-name of the corporation, and organize a subsidiary corporation for his own benefit with assets belonging to the defendant corporation. Judgment was demanded in favor of the corporation against the defendant Charles B. Thomes for an accounting and recovery of the amount found to be due; that a receiver of the corporation be appointed until payment of the judgment; that the judgment be declared a lien on Charles' stock; and that he be enjoined from disposing of his stock until payment of the judgment, from disposing of secret formulas, the trade-mark and trade-name, and from forming a subsidiary corporation. It concludes with a prayer "for such other and further relief as may be just."

The answer to the amended complaint denied all wrongdoing and alleged, among other things, that whatever money had been withdrawn was for Charles' salary and expenses as an officer and agent of the corporation and that the appointment of a receiver would prove disastrous to the business.

The reply was a general denial.

The evidence showed that between July 1, 1934, and May 1, 1939, Charles B. Thomes had withdrawn from the corporation $38,487.38. During that time the corporation had paid to Frederica $11,183.11, although she had rendered no services to it. The books showed a credit balance in favor of Frederica of $3,603.94 and a debit balance against Charles of $250.

Plaintiff claimed that in August, 1934, Frederica and Charles, each of whom then owned 50 per cent of the stock, agreed that Charles should receive $70 per week for his services and that she should receive $35 per week as salary but that she was to render no services. Charles admitted that she was to receive the $35 per week, which he said was to give her an income for her support. He denied that he was to receive the $70 per week. There was evidence that he made large withdrawals and that eventually his salary was fixed at $600 per month. During the period in question the weekly withdrawals by Charles averaged $153 and those by Frederica $46.

It became necessary for Charles to account for numerous items charged to "an accrual account" in his name. His purpose was to show that charges against the corporation as well as himself were carried in this account and that the amount chargeable against him personally could be ascertained only by segregating and tracing the source of the different items. This in turn involved some examination of the finances of the corporation from 1931 to the time of trial. In 1931 Charles and his brother Sidney acquired the ownership of all the stock of the corporation on an equal basis. Sidney died in 1934, and his widow, Frederica, was appointed his personal representative. The corporation kept a "surplus" account to which items of profit and loss were charged and credited. In 1935, at Charles' direction, two accrual accounts were opened, one of which was designated the "C. B. Thomes Accrual" and the other the "S. P. Thomes Accrual." The latter was carried for Frederica. Items formerly carried in the surplus and some items from the capital accounts were transferred to and thereafter carried in the accrual accounts.

Omitting much detail, the amounts of loans by the brothers to the corporation, which formerly had been carried in the capital account, were transferred first to the surplus and then to the respective accrual accounts. We do not indicate whether we approve the bookkeeping transactions. The existing surplus was divided and credited fifty-fifty to the accrual accounts. Then the practice was to treat anything earned over and above the expense of operating the business as gain and anything less than that as loss and to credit or charge it, as the case might be, fifty-fifty to the respective accrual accounts. Salaries and expenses were regarded as expenses of operation. The purpose of this arrangement was to charge off all corporate gain so there would be no corporate income subject to corporate income taxes. Items formerly charged to profit and loss were charged fifty-fifty to the accrual accounts. Devaluation of fixtures, spoilage, bad accounts, the excess paid to Frederica above her salary, and other items were charged to these accounts. The showing was that many of

the charges were not against either Charles or Frederica personally although the accounts were in the names of Charles B. and Sidney P. Thomes. The items in question were chargeable against the corporation, and if it had kept a surplus account, as we are informed on the argument is the ordinary corporate practice, they would have been charged to the surplus account of the corporation.

The fifty-fifty basis was not maintained throughout the entire period. More charges were made against Charles' than Frederica's account. For example, in 1937 an item of loss amounting to over $4,900 was charged wholly to Charles. The result was that Charles' account showed a debit and Frederica's (S. P. Thomes Accrual) showed a credit.

The evidence is explicit, and the trial proceeded upon the assumption that the credits did not represent transactions creating any indebtedness or liability on the part of the corporation and that the debits did not necessarily represent transactions by which the parties became indebted or liable to the corporation. Business losses are chargeable to the corporation and not to the stockholder. By charging off losses to the individual accrual accounts the credits were subject to reduction and to being wiped out altogether. In Charles' case the account was kept so as to show that he was liable to the corporation for the $250 debit. Plaintiff, as part of his case, introduced a trial balance statement and testimony showing the credit in favor of Frederica and the debit against Charles, but did not attempt to show the source of her credit. No claim was made that Frederica was entitled to recover the credit. No attempt was made to show that the credit in fact represented an indebtedness or liability on the part of the corporation to Frederica.

The court found that Charles' withdrawals represented the reasonable value of his services and expenses, that Charles was not indebted to the corporation, and that it was not indebted to him. It found that the corporation was indebted to Frederica in the amount of the credit of $3,603.94. It directed Charles to call a stockholders' meeting. All other relief was denied.

The corporation appeals from the judgment. It contends that the judgment for a money recovery against the corporation in favor of plaintiff as the personal representative of Frederica was not authorized upon the grounds that it was "outside the issues presented by the pleadings or litigated at the trial." The argument is that plaintiff was not entitled to recover a judgment for his own benefit as such representative upon the grounds that the action was brought on behalf of the corporation and not of plaintiff. Plaintiff contends that he was entitled to the relief granted under the complaint upon the grounds that, since the parties were before it, the court had the power to adjust all matters between them and that the prayer for general relief comprehended relief not only for the corporation but for plaintiff. He further contends that his right to recover was litigated by consent.

■ A representative suit by a stockholder has the dual aspect of an action against the corporation to compel it to act in the discharge of its duty to protect the stockholders against wrongdoing by bringing an appropriate action when necessary to enforce its rights and of an action on behalf of the corporation against the wrongdoers to obtain redress for the violation of such rights. Koral v. Savory, Inc. 276 N. Y. 215, 218, 11 N. E. (2d) 883.

The complaint in the instant case conforms to the rule that a cause of action must be alleged in favor of plaintiff against the corporation entitling him to sue as its representative and that another cause of action must be set forth in favor of the corporation against the alleged wrongdoer, here the individual defendant Charles B. Thomes, with the same particularity as if the action had been brought by the corporation. Continental Securities Co. v. Belmont, 206 N. Y. 7, 99 N. E. 138, 51 L.R.A.(N.S.) 112, Ann. Cas. 1914A, 777. In legal effect, the action so far as it relates to the wrongdoer is one by the corporation conducted by the stockholder as its representative. Eriksson v. Boyum, 150 Minn. 192, 184 N. W. 961. The cause of action, being based as it is upon corporate right, belongs to the corporation and is enforced for its exclusive benefit. The same relief is granted as if the action had

been instituted by the corporation itself. Seitz v. Michel, 148 Minn. 80, 181 N. W. 102, 12 A. L. R. 1060; Meyers v. Smith, 190 Minn. 157, 251 N. W. 20; Converse v. Hood, 149 Mass. 471, 21 N. E. 878, 4 L. R. A. 521; Hearst v. Putnam Mining Co. 28 Utah, 184, 77 P. 753, 66 L. R. A. 784, 107 A. S. R. 698; 13 Fletcher, Cyc. Corp. (Perm. ed.) §§ 5963, 6028.

The only issues made by the pleadings related to the plaintiff's right to bring the action as the representative of the corporation and to the corporation's right of recovery against Charles B. Thomes. No issue was presented relating to any right of plaintiff to recover a judgment against the corporation in his favor and for his benefit as the representative of Frederica. Under the pleadings that question was not before the court and could not be considered.

■ The prayer for general relief does not change the character of the cause of action alleged in the complaint or enlarge the relief to which plaintiff is entitled. Rivkin v. Niles, 195 Minn. 635, 263 N. W. 920; Premier Inv. Co. Inc. v. Western Surety Co. 177 Minn. 256, 225 N. W. 12; 5 Dunnell, Minn. Dig. (2 ed. & Supps.) § 7537. General relief in a representative action by a stockholder does not comprehend a personal judgment in favor of the stockholder against the corporation based on a debt or other liability either as part of his cause of action against the corporation entitling him to sue as its representative or the corporation's cause of action against the wrongdoer. A prayer for general relief does not authorize the granting of relief for which there is no basis in the pleadings.

■ Plaintiff urges that he is entitled to recover the amount of the credit in favor of Frederica because the question of the corporation's indebtedness and liability to her was litigated by consent. An issue may be litigated by consent of the parties without pleadings the same as if it had been raised by them. State v. Rock Island Motor Transit Co. 209 Minn. 105, 295 N. W. 519. There was no express consent. Implied consent is claimed.

Where an implied consent to litigate an issue is claimed, it is to be gathered from the course of the trial. We have examined the record with painstaking care and fail to find where plaintiff claimed or asserted any right to recover in his own right as the personal representative of Frederica the amount of the credit in her favor. Nor can we find any instance that the evidence was offered or received for the purpose of establishing an indebtedness or liability on the part of the corporation to her. The only basis for the claim of litigation by consent is that the evidence showing the credit was received without objection. That under the circumstances of the case is not sufficient. There is a presumption that evidence is offered and received with reference to the issues made by the pleadings.

A consent to try an issue not raised by the pleadings cannot be inferred from the fact that evidence was received without objection which would have been pertinent to such an issue if it had been raised, where the evidence was pertinent to the issues actually made by the pleadings. Canty v. Bockenstedt, 170 Minn. 383, 212 N. W. 905; Hostetter v. Illinois Cent. R. Co. 104 Minn. 25, 115 N. W. 748; 5 Dunnell, Minn. Dig. (2 ed. & 1932 Supp.) § 7675.

Not only is the inference of consent not permissible, but the evidence as a whole precludes it. The evidence showed, as has been stated, that the transactions carried in the accrual accounts created no indebtedness or liability as between the parties. All the items in the accrual account of Charles B. Thomes were explained with such thoroughness that the court below was persuaded to find that he was not indebted to the corporation and that it was not indebted to him. The evidence showed that the items to Frederica's credit in the S. P. Thomes account created no indebtedness or liability and that the credit might be reduced or entirely wiped out. Perhaps that alone would prevent a finding that the credit represented a debt or liability. The plain fact is that the accrual accounts were examined solely to show the manner of conducting the corporate business and not to establish a claim by plaintiff that the credit in favor of Frederica repre-

sented an actual debt or liability. The credit in favor of Frederica was disclosed only incidentally in showing the whole corporate picture.

It is to be remembered that if such a claim had been pleaded as a separate cause of action, the complaint would have been demurrable for misjoinder of causes of action. A party cannot join causes of action in his personal and representative capacities. Seitz v. Michel, 141 Minn. 244, 170 N. W. 197. See Gardner v. Kellogg, 23 Minn. 463; Pomeroy, Code Remedies (5 ed.) § 396, note 8. Not only would plaintiff have the court infer that there was litigation by consent of an issue not raised by the pleadings, but that defendants consented also to a misjoinder of causes of action.

The issue whether the corporation was indebted to Frederica was not in the case. It was error to find that plaintiff was entitled to recover on that issue.

Reversed.

#### After Reargument.

On March 21, 1941, the following opinion was filed:

Peterson, Justice.

After the case was submitted but before decision below defendants filed a memorandum with the court urging it to hold as a determination of all matters in controversy among the parties that plaintiff as Frederica's representative was entitled to recover the $3,600 credit and that Charles be allowed the items withdrawn by him from the corporation.

No reference was made in the findings of fact and conclusions of law to the memorandum. It was not printed in the record, nor was it returned to us or called to our attention until after our decision had been filed. Then it was shown as the basis of the decision below. Plaintiff denies that he knew of the filing of the memorandum until after our decision on appeal, and there is no satisfactory showing to the contrary.

■ A reargument should be granted where, as here, an important fact controlling decision has been entirely overlooked. We failed entirely to consider the memorandum because we did not know of its existence.

■ Where a party has invited the particular judgment which was rendered, he cannot complain on appeal that it was erroneous. Bank of Dakota County v. Garvin, 167 Minn. 101, 208 N. W. 642. Nor will a party be permitted to shift his position on appeal. Burke v. Burke, 209 Minn. 386, 297 N. W. 340.

The evidence did not in any view sustain a finding in favor of Frederica for the $3,600, but it would have supported a finding either for or against Charles. If the finding had been against him it might have been for a very large sum. In that situation, defendants, to escape a possible liability for a very large sum, were willing that Frederica be allowed the credit, which was quite a substantial item. True, plaintiff as the personal representative of Frederica was before the court only as the representative of the corporation asserting its cause of action against the defendants, but there was nothing to prevent him from appearing with the consent of all concerned to assert claims due to the estate of Frederica. By causing judgment to be entered in accordance with the findings of fact and conclusions of law, plaintiff consented to the decision and appeared in his own behalf as representative.

The trial judge should have stated in the findings of fact and conclusions of law that the memorandum was the basis of his decision. Without it, the decision below was inexplicable. But with it the decision appears to be a fair and just disposition of all controversies among the parties in their several capacities with respect to the subject matter in litigation.

Plaintiff is therefore entitled to an affirmance. The reversal of the judgment is set aside and in lieu thereof we affirm the same.

Affirmed on reargument.