## Lorch *v.* Eglin, Appellant.

Argued November 16, 1951. Before DREW, C. J., STERN, STEARNE, BELL, LADNER and CHIDSEY, JJ.

*Henry S. Ambler,* with him *Frank R. Ambler,* for appellants.

*Maurice H. Brown,* with· him *Robert M. Bernstein,* for appellee.

OPINION BY MR. JUSTICE HORACE STERN, January 7, 1952:

Lorch, the plaintiff, and Eglin, the defendant, started on an automobile trip from Philadelphia to New Orleans, New Mexico and California; for Lorch it was a pleasure, for Eglin a business trip. The automobile belonged to Lorch but Eglin agreed that he would pay for the gas, oil and parking. Lorch drove the car from Philadelphia to Baltimore, where they stopped for lunch, after which Eglin, at Lorch's request, took the wheel. At a point in Virginia about 75 miles south of Washington the car collided with another automobile which had been parked ahead of them in the center of the two-lane highway. There seems little room for doubt but that the accident was caused by Eglin's

negligence in the operation of the car. Lorch, seated beside him on the front seat, was seriously injured, and brought suit for damages against Eglin and Eglin's Garages, Inc., the corporation of which Eglin was an officer and on the business of which he was then engaged.[1] The jury returned a verdict in plaintiff's favor in the sum of $35,000. Defendants appeal from the discharge by the court below of their motions for new trial and for judgment n.o.v.

The accident having happened in Virginia, plaintiff's right of action must, of course, be determined by the law of that State. Appellants complain that they were not allowed to prove that law because the trial judge refused to accept testimony on the subject from a member of the Virginia Bar who was called by defendants as an expert witness. The Act of May 4, 1939, P. L. 42, provides that every court of this State shall take judicial notice of the common law and statutes of every State, that the court may inform itself of such laws in such manner as it may deem proper, and that the determination of such laws shall be made by the court and not by the jury. Since, therefore, it was the function of the court to take judicial notice of the Virginia law there was no *need* for testimony on the subject to be presented by witnesses, for judicial notice is not dependent upon the usual forms and methods of evidence. It is true that the statute provides that "any party may also present to the trial court any admissible evidence of such laws"[2] and therefore the

---

[1] In their answer to plaintiff's complaint defendants did not deny Eglin's agency for the defendant corporation nor raise any question as to the latter's liability arising from the fact that Eglin chose to travel by automobile instead of by train or plane.

[2] The statute conditions this right by providing that if any party desires to offer evidence of the law in another jurisdiction, or to ask that judicial notice be taken thereof, reasonable notice shall be given to the adverse parties, either in the pleadings or

court should have received the testimony offered for that purpose, but whatever error was thereby committed was harmless since the ultimate requirement was only that the court should give such instructions to the jury as to the rights of the plaintiff and liability of defendants as were proper under that law, and this the court did. Virginia has a statute which provides that "No person transported by the owner or operator of any motor vehicle as a guest without payment for said transportation . . . shall be entitled to recover damages against such owner or operator for . . . injury to the person . . . of such guest resulting from the operation of such motor vehicle unless such . . . injury was caused or resulted from the gross negligence or wilful and wanton disregard of the safety of the person . . . being so transported on the part of such owner or operator." Defendants concede that in the absence of such a statute Lorch could recover damages from Eglin for injury sustained as the result of the latter's negligence, since no person may negligently injure another without being responsible for damages (*Johnson v. Hetrick*, 300 Pa. 225, 150 A. 477; *Perry v. Ryback*, 302 Pa. 559, 153 A. 770; *DeVillars v. Hessler*, 363 Pa. 498, 70 A. 2d 333; *Beam v. Pittsburgh Rwys. Co.*, 366 Pa. 360, 77 A. 2d 634; *Hopshire v. Yesenosky*, 157 Pa. Superior Ct. 545, 43 A. 2d 351). But they contend that under the above statute Lorch, to sustain a cause of action, must establish that Eglin was not

---

otherwise. We do not agree with the court below that defendants did not give adequate notice that they wished to prove what the law of Virginia was, because in the New Matter to their answer they averred that plaintiff's cause of action was governed by the laws of that State and that under those laws plaintiff could not recover except on proof that the operator of the car was guilty of gross negligence or wanton conduct, and they concluded with the statement: "All of which defendants aver to be true *and expect to be able to prove at the trial of the cause*".

merely negligent but grossly negligent or guilty of a wilful and wanton disregard of Lorch's safety, and plaintiff admitted that the testimony as to Eglin's negligence did not measure up to such a requirement. The reason, however, why this contention is without merit is that Lorch was not a *guest* in the car. He was riding in his own automobile, and, while apparently there is no direct decision of a Virginia court covering such a situation, there can be no doubt as to the proper judicial interpretation of the statute applicable to the present circumstances. It was said in our own case of *Beam v. Pittsburgh Rwys. Co.*, 366 Pa. 360, 372, 77 A. 2d 634, 640: "It would be flying in the face of all the authorities to hold that merely by allowing Shook [the friend of the owner] to drive the car Beam [the owner] made him a bailee of the automobile and completely abnegated his right of control over the operation of his own car. Plaintiff's statement of claim alleged that Beam was a 'guest passenger,' but there is not a word of testimony to indicate that Beam had relegated himself to the status of a 'guest' in his own automobile and had actually bailed or turned over to Shook the car and the exclusive charge and control thereof." The same conclusion was reached in Connecticut in *Gledhill v. Connecticut Company*, 121 Conn. 102, 183 A. 379; in that case it was said (pp. 105, 106, A. pp. 380, 381): "As used in the statute, the term [guest] imports that the person riding in a motor vehicle is a recipient of the hospitality of the owner or driver. . . . To hold that if the owner of an automobile is riding therein and a friend is driving, the owner is the guest of the friend simply because the friend is driving, would be to import into the statute a meaning not expressed by the Legislature." In Restatement, Torts §490, comment a, it is said that "The word 'guest' is used to denote one whom the owner or possessor of a motor car or other vehicle invites or

permits to ride with him as a gratuity, . . . ." In *Anderson v. Burkardt*, 275 N.Y. 281, 9 N.E. 2d 929, the court said (p. 283, A. p. 929) : "It [the 'guest rule'] does not apply . . . to the owner who is being driven in his own car; he is no guest." It may be added that not only would it be contrary to any ordinary meaning of the term guest to hold that the owner of a car was the "guest" of his friend who was driving it but it cannot be said that such an owner is being transported "without payment for said transportation", since he is furnishing the use of his automobile and thereby contributing to the cost of the transportation the equivalent of the rental value of his car. Accordingly it is clear that Lorch did not come within the terms of the statute which would have made it necessary for him to prove more than ordinary negligence on the part of Eglin in order to establish his cause of action.

While, therefore, the court below properly discharged defendants' motion for judgment n.o.v. it committed error, in our opinion, in refusing their motion for a new trial. It would seem quite apparent that the amount of the verdict which the jury rendered was greatly influenced by the introduction into the case of testimony that plaintiff's injury might *possibly* result in his developing meningitis. He suffered occasional leakages of cerebrospinal fluid through the nose, and a doctor called by plaintiff testified that *"If* [this fluid] does become infected we get a condition known as meningitis;" that meningitis is "a very serious condition;" that "it *can* result in recovery or death;" that "it is very *possible* and it happens very frequently in other cases that the fluid becomes infected and the patient develops a meningitis"; that "this man's future is very insecure;" that "because of the continued cerebrospinal leak he is sitting on a keg of dynamite. Any time he is *liable* to get meningitis. *If* he gets meningitis and he recovers, he is all right; *if* he doesn't, something may hap-

pen to him." He further testified that such a leak "might go on for a year, or it *might* stop tomorrow— he *might* get a meningitis and die, or it *might* stop, be completely recovered." In his charge to the jury, the learned trial judge rehearsed the doctor's testimony as follows: "The doctor said that there is *danger* in a case of this kind of the fluid's becoming infected and meningitis setting in, meningitis being an inflammation of the membranes of the brain;" also, the doctor said, that the fluid pushing through the area of repair "leaves the patient *susceptible* to meningitis. The doctor did not say that that was usual or that it would follow, but that it was *very possible.*" He also recalled to the jury the doctor's statement that the "future is very insecure," and added: "you will remember his picturesque phrase that he is sitting on a keg of dynamite, he *may* get meningitis. . . . ." The effect of such alarming, but legally inadmissible, testimony on the jury may well be imagined; its introduction into the case, and its repetition in the charge of the court, was unquestionably error which was extremely harmful to defendants, it being firmly established that a *mere possibility* of future consequences resulting from an accident is not admissible in evidence; the object of this rule is to prevent a jury from estimating damages on the basis of mere conjecture or speculation as to what *might* occur in the future: *Ott v. Philadelphia,* 235 Pa. 354, 84 A. 348; *Rice v. Hill,* 315 Pa. 166, 173, 172 A. 289, 291, 292; *O'Reilly v. Monongahela Street Rwy. Co.,* 17 Pa. Superior Ct. 626, 630. In the *Rice* case, where a physician was asked whether in his opinion the plaintiff would continue permanently to suffer pain from his injury and he replied "It is a very likely possibility," we held that an objection to this answer would properly have been sustained, and reference was made in that connection to the case of *Anderson v. Baxter,* 285 Pa. 443, 132 A. 358, where it was held that for an expert to characterize

a certain result as "extremely possible and likely" was not a sufficiently definite expression of opinion. In the *O'Reilly* case, where a physician was asked whether, from his examination of the plaintiff, he believed that necrosis was something reasonably to be apprehended, and his answer was that "From the condition that man is in at the present time and the appearance of that wound I would say it is to be feared", it was held that the jury should not have been allowed to be influenced by such testimony, the court saying that "It is not what is to be feared but what is to be reasonably expected as the probable result of an injury which is to be taken into consideration by the jury in cases of this character." It is true that in the present case the court pointed out during the course of the examination of the doctor that meningitis had not *yet* occurred, and it is also true that the doctor testified that he told plaintiff it would be much better for his health if he did not expose himself in a type of work involving changes of temperatures, since it was *"possible* that it might predispose him toward getting a cold;" on the basis of that testimony it is now argued by plaintiff that the introduction into the case of the possibility of meningitis was in order to show that the reason why plaintiff sold the meat business which he had been conducting was to avoid possible exposure there to changes of temperature. Be that as it may, however, when the testimony was given by the doctor in regard to meningitis it was not presented by him on that theory, nor was its admissibility so limited, neither did the learned trial judge charge the jury, as it was important he should have done, that they were not to consider the possibility of plaintiff's developing meningitis and the direful results that might ensue therefrom as an element of damages in the case.

There were other errors, or at least deficiencies in the testimony, which characterized the presentation of

plaintiff's case in regard to the amount of damages recoverable. For example, he testified that he drew $125. a week from his meat business, but he had a capital investment and employed other persons therein and there was no evidence to show whether the amount so drawn was merely from profits earned, or whether it was intended to represent the value of his own services to the business and therefore served as an index of his earning power. Moreover, having sold his business, and having presumably reinvested the proceeds therefrom in some other form, the income thereby obtained would obviously be an offset to the loss claimed by him due to the cutting off of the money he had been drawing from the business, but no evidence was presented on that subject. These matters will presumably be more carefully developed at a retrial.

Judgment reversed and new trial granted.