CHARLES E. PHELPS, TRUSTEE FOR HEIRS AND NEXT OF KIN OF ELEANOR E. HIGGINS, v. MELVIN BENSON. GEORGE A. HIGGINS v. SAME.

90 N. W. (2d) 533.

May 29, 1958—Nos. 37,278, 37,279.

458

*Samuel Saliterman, Michael Robins,* and *Charles Alan Wright,* for appellants.

*Meagher, Geer, Markham & Anderson, Manson Reedal, O. C. Adamson II,* and *Carlsen & Greiner,* for respondent.

KNUTSON, JUSTICE.

These cases arose out of an automobile accident which occurred on U. S. Highway No. 14 east of Rapid City, South Dakota, on July 4, 1953.

Mr. and Mrs. Higgins and Mr. and Mrs. Benson had lived in Minneapolis prior to the accident. They had been very close friends for several years. Mr. and Mrs. Higgins and Mrs. Benson were all employed at the Twin City Arsenal. The two couples frequently went on short trips together, and they were together nearly every weekend. Shortly before the trip involved here, Mr. and Mrs. Higgins and Mrs. Benson were riding to work together. Mrs. Benson mentioned the fact that she and her husband planned to drive to Quantico, Virginia, on their vacation to pick up their son, who was in the Marines, during his leave. Mr. Higgins then suggested that the two couples join their vacations and also make a joint pleasure trip of it. The following weekend they got together and began to plan the trip. It was decided that they would use Mr. Higgins' car for the reason that it was newer and had better tires. They intended to include in their itinerary Rapid City and the Black Hills in South Dakota; Denver, Colorado, where the Bensons had some relatives they wished to visit; Juarez, Mexico; northern Florida; and then Quantico. They were to share the expenses of the trip, each paying half of the gasoline, oil, meals, and lodging. This

was to be handled by keeping an account of all the expenses during each day; each night the one who had paid the expenses that day was to be reimbursed by the other for one-half thereof. They were also to share in the driving of the car. If there were any major repairs to the car, Mr. Higgins apparently was to pay for them, although his testimony in that respect was as follows:

"The conversation was that everything was to be divided, food, lodging, anything that we shared together on the trip, with the exception of major breakdown or something, because I didn't figure we would have any so there was nothing mentioned about that."

The two couples left Minneapolis around 2 a. m. on July 4. To begin with, Mr. Higgins was driving the automobile. They stopped a few times for coffee, and Mr. Higgins continued to drive until they were a short distance past Phillips Junction in South Dakota on their way to Rapid City. Mr. Higgins then stopped the car on the side of the road and exchanged places with Mr. Benson. The two men sat in the front seat, and the two women sat in the back. After Mr. Benson had driven for some time he drove off the road and the car went down an embankment. Mrs. Higgins died as the result of injuries received, and Mr. Higgins sustained some personal injuries. The car was demolished.

Separate actions against Mr. Benson were commenced by Mr. Higgins to recover for his personal injuries, medical expenses, and damage to his car and by Charles E. Phelps, as trustee for the heirs and next of kin of Mrs. Higgins, to recover for her death. The cases were consolidated for trial. In answer to a special verdict, the jury found that Benson was negligent and that such negligence was the proximate cause of the accident. The jury also found that Mr. and Mrs. Higgins were not guests with compensation. Judgment was ordered for Mr. Higgins for recovery of damages to his automobile and for defendant as to all other claims in both actions. Separate appeals, which have been consolidated here, were taken from an order denying a motion for an order amending the special verdict and granting judgment to plaintiffs or for a new trial.

Inasmuch as the accident occurred in South Dakota, the rights of the parties are governed by the laws of that state. S. Dak. Code of 1939, § 44.0362, as far as material, reads:

"No person transported by the owner or operator of a motor vehicle as his guest without compensation for such transportation shall have cause of action for damages against such owner or operator for injury, death, or loss, in case of accident, unless such accident shall have been caused by the willful and wanton misconduct of the owner or operator of such motor vehicle, * * *."

The decisive questions presented here center around a determination of whether Mr. and Mrs. Higgins, or either of them, were guests without compensation for such transportation within the meaning of this statutory provision. Some of the questions raised by the appeal have not been answered by the South Dakota court. It is always a disagreeable task to be compelled to determine, as best we can, how a state would construe its statute if the determinative questions were before it; but, in the absence of controlling decisions from that state, we must try to construe the South Dakota statute as we think the courts of that state would do if these questions were before it, using as our guide such decisions of the South Dakota court as we may have available.

The rule generally followed by most states for so-called "guest statutes" is that such statutes, being in derogation of the common law, must be strictly construed against the host and liberally construed in favor of the guest.[1] South Dakota does not follow this rule. S. Dak. Code of 1939, § 65.0202(1), reads:

"The rule of the common law that statutes in derogation thereof are to be strictly construed has no application to this Code. This Code establishes the law of this state respecting the subjects to which it relates and its provisions and all proceedings under it are to be liberally construed with a view to effect its objects and to promote justice;"

In Scotvold v. Scotvold, 68 S. D. 53, 58, 298 N. W. 266, 268, the Supreme Court of South Dakota said:

"* * * While the common law is in force in this jurisdiction except where changed by statute or by other expression of the sovereign will, SDC 65.0103, the rule of strict construction of statutes in derogation of common law does not obtain in this state. Our function is to effectuate

---

[1] 60 C. J. S., Motor Vehicles, § 399(3), p. 996.

the legislative purpose through liberal construction. SDC 65.0202."

In seeking to determine the legislative intent in enacting a statute in derogation of the common law we may consider the common law before the enactment of the statute; the mischief or defect existing in the common law which the statute was intended to correct; and the reason for adoption of the act. The judicial function of interpretation should be to so construe the act as to suppress the mischief and advance the remedy according to the true intent of the legislature as near as that can be determined.[2]

What then are the defects in the common law which these so-called guest statutes were intended to remedy? Under the common law, a guest may recover of the operator of an automobile for ordinary negligence.[3]

In Crawford v. Foster, 110 Cal. App. 81, 87, 293 P. 841, 843, the California court, in discussing the purpose of enacting its guest statute, said:

"* * * The situation that this section was apparently designed to prevent is well known. As the use of automobiles became almost universal, the proverbial ingratitude of the dog that bites the hand that feeds him, found a counterpart in the many cases that arose, where generous drivers, having offered rides to guests, later found themselves defendants in cases that often turned upon close questions of negligence. Undoubtedly, the legislature, in adopting this act, reflected a certain natural feeling as to the injustice of such a situation."

In Naudzius v. Lahr, 253 Mich. 216, 223, 234 N. W. 581, 583, 74 A. L. R. 1189, 1192, the Michigan court, in stating the purpose behind the enactment of its guest statute, goes much further, saying:

"It would be threshing old straw to discuss the accepted fact that the motor car has presented social, financial, and governmental problems which justify the legislature in reasonably classifying it apart from other vehicles in the enactment of laws. L. R. A. 1918D, 134, note.

\* \* \* \* \*

---

[2]Stabs v. City of Tower, 229 Minn. 552, 40 N. W. (2d) 362; Lord Coke in Heydon's Case, 3 Coke Rep. 7 a, 76 Eng. Rep. 637.

[3]60 C. J. S., Motor Vehicles, § 399(3).

"Generally, gratuitous passengers are relatives or friends. Exceptionally, they are mere acquaintances, invited chance pedestrians, or those who deliberately solicit rides. Since the rule of liability was announced in Roy v. Kirn, 208 Mich. 571, there has been considerable litigation between guests and hosts. Some between husband and wife or other close relatives has found its way to this court. * * * In many, probably most, of the cases between relatives or friends, the real defendant is an insurance company. Ordinary negligence is not hard to prove if guest and host co-operate to that end. It is conceivable that such actions are not always unattended by collusion, perjury, and consequent fraud upon the court. While we may accept the contention that paid insurers are not objects of special consideration by the legislature, it is inadmissible for the court to consider a law from the viewpoint that they are not entitled to a proper trial and honest determination of liability in a lawsuit. Nor are insurance companies alone interested in the question. The results of verdicts are mirrored in insurance rates, and the law provides a possible reason in the purse of the motor owning public, most of whom carry liability insurance. It is not inconceivable that some passengers who solicit rides may manufacture claims for liability. Groups of young folks, engaged upon a joint enterprise of social enjoyment in a borrowed car, have been known to combine to charge the owner for an accident. The law also has social features. It is well known that drivers hesitate to take neighbors for a ride or to assist on his way a weary traveler because of potential liability for injuries. Few, if indeed any, of these features seem to have manifested themselves in the use of other vehicles than motor cars. Perhaps the legislature also had other reasons for the law."

South Dakota adopted the Michigan statute and had in mind the interpretation of it prior to the enactment of the act, including the above case. In the first case that came before the South Dakota court after the enactment of its act, Melby v. Anderson, 64 S. D. 249, 250, 266 N. W. 135, 136, the court said:

"When our Twenty-Third Legislature assembled in 1933 'automobile guest statutes' had previously been passed and published and were available for examination and comparison in seventeen states, as follows:

[hereafter are listed the states having guest statutes].

\* \* \* \* \*

"Upon a consideration of these statutes, it appears clear beyond question, not only that our Legislature adopted the Michigan statute, but also that our Legislature did not adopt any other statute, \* \* \*. \* \* \* In the present case an inspection of the existing statutes demonstrates clearly and affirmatively that our Legislature did 'copy and adopt' the Michigan law and no other.

"Before we thus took over the Michigan statute it had been discussed and construed by the Supreme Court of Michigan in at least eleven different cases during a period extending from January, 1931, to January, 1933, as follows: Naudzius v. Lahr (Jan. 1931) 253 Mich. 216, 234 N. W. 581, 74 A. L. R. 1189, 30 N. C. C. A. 179; [other cases listed].

"Conceding that the prior Michigan interpretation of the statute is not binding upon us 'unless we feel that such construction is sound and based upon reason' \* \* \* it is nevertheless the general presumption that the South Dakota Legislature intended to enact a law with the meaning that the courts of Michigan had previously placed upon the Michigan statute which our Legislature adopted. [Citing cases.]

\* \* \* \* \*

"We conclude, therefore, as follows: This statute was taken from the law of Michigan, and will be construed and interpreted in the light of the Michigan decisions relating to it before our Legislature adopted it."

In Espeland v. Green, 74 S. D. 484, 487, 54 N. W. (2d) 465, 466, the South Dakota court said:

"\* \* \* In the Melby case in which our guest statute was first interpreted the court recognized the purpose of the legislative enactment to relieve a driver or owner of an automobile from liability to a guest arising from ordinary negligence."

■ With these general observations in mind, we proceed to consider the specific questions raised by plaintiffs. Plaintiffs contend that the owner of an automobile cannot be a guest within the meaning of the South Dakota guest statute while riding in his own automobile. This contention presents a troublesome problem and one for which there is

no easy solution. Unfortunately, South Dakota has never squarely passed upon the question, nor is there much authority elsewhere of great help to us. Apparently plaintiffs rely for the most part upon Gledhill v. Connecticut Co. 121 Conn. 102, 183 A. 379; Lorch v. Eglin, 369 Pa. 314, 85 A. (2d) 841; Ray v. Hanisch, 147 Cal. App. (2d) 742, 306 P. (2d) 30; and Ahlgren v. Ahlgren, 152 Cal. App. (2d) 723, 313 P. (2d) 88.

In the Gledhill case plaintiff's decedent was riding in an automobile which he owned and which was then being driven by one Graham while the two men were going on a fishing trip. The court held that the evidence in that case would not warrant a finding by the jury that Gledhill was Graham's guest. In so doing, the court said (121 Conn. 105, 183 A. 380):

"* * * It is plain that the person must be transported as a guest of the other party, and the transportation must be without payment in order that the provisions of the statute may apply. In Walling v. Potter, 35 Conn. 183, 185, in considering whether the relationship of innkeeper and guest arose, we said that 'anyone away from home, receiving accommodations at an inn as a traveler, is a guest,' and that 'a guest is one who patronizes an inn as such.' In Webster's New International Dictionary (2d Ed.) 1112, a guest is defined as 'a person entertained in one's house or at one's table; a visitor entertained without pay; hence, a person to whom the hospitality of a home, club, etc., is extended.' As used in the statute, the term imports that the person riding in a motor vehicle is a recipient of the hospitality of the owner or driver. [Citing cases.]

"Upon the facts claimed, there is nothing which would have warranted the jury in concluding that at the time of the accident Gledhill was the guest of Graham. The two were riding in Gledhill's automobile. They were going fishing together. The automobile was being driven by Graham at Gledhill's request, and the latter was sitting on the front seat with the driver. There is nothing from which the inference could be drawn that Gledhill was enjoying the hospitality of Graham. The most that is indicated is that Graham was performing a gratuitous service for Gledhill. Proof of this fact does not make Gledhill the guest of Graham.

To hold that if the owner of an automobile is riding therein and a friend is driving, the owner is the guest of the friend simply because the friend is driving, would be to import into the statute a meaning not expressed by the Legislature."

It is apparent from an examination of subsequent cases that the decision in the Gledhill case furnishes the reason behind and the basis for those decisions. The definition of a guest in the Gledhill case is taken largely from the old cases dealing with guests in public inns. It adopts a dictionary definition of guest which has little application to the objects which the guest statutes seek to accomplish. In Langford v. Rogers, 278 Mich. 310, 317, 270 N. W. 692, 695, the Michigan court recognized this fact and said:

"The old definition of a guest as a visitor sojourning in the house or entertained at the table of another * * * has little or no application to its meaning in this act."

In Lorch v. Eglin, 369 Pa. 314, 85 A. (2d) 841, plaintiff, the owner of an automobile, and Eglin, defendant in the action, started on a trip together. For Lorch it was a pleasure trip; for Eglin it was a business one. While Eglin was driving, an accident occurred in the State of Virginia, where they have a guest statute quite similar to the one before us. In holding that Lorch was not a guest, the Pennsylvania court followed the Gledhill case, saying (369 Pa. 318, 85 A. [2d] 843):

"* * * Lorch was not a *guest* in the car. He was riding in his own automobile, and, while apparently there is no direct decision of a Virginia court covering such a situation, there can be no doubt as to the proper judicial interpretation of the statute applicable to the present circumstances."

Thereafter, Beam v. Pittsburgh Rys. Co. 366 Pa. 360, 77 A. (2d) 634, which did not involve a guest statute, and Gledhill v. Connecticut Co. *supra,* were discussed, after which the court said (369 Pa. 319, 85 A. [2d] 843):

"* * * It may be added that not only would it be contrary to any ordinary meaning of the term guest to hold that the owner of a car was the 'guest' of his friend who was driving it but it cannot be said that

such an owner is being transported 'without payment for said transportation', since he is furnishing the use of his automobile and thereby contributing to the cost of the transportation the equivalent of the rental value of his car."

Anderson v. Burkardt, 275 N. Y. 281, 9 N. E. (2d) 929, is also cited and apparently followed by the Pennsylvania court in the Lorch case. That case did not involve a guest statute either. It involved a question of whether the negligence of the driver was imputable to those riding with him. In that case it did not appear definitely to whom the automobile belonged. It was being driven by a son of the plaintiffs in the action, who were husband and wife. With respect to the question of whether the passengers were guests, the court said (275 N. Y. 283, 9 N. E. [2d] 929):

"A passenger may recover for injuries received in a collision between two automobiles even though both drivers were at fault. * * * This is the so-called 'guest rule.' It does not apply, however, to the owner who is being driven in his own car; he is no guest."

Apparently that case is contrary to our decision in Sackett v. Haeckel, 249 Minn. 290, 81 N. W. (2d) 833. In that case the owner of an automobile and his fiance were traveling together. At the time of the accident the owner was not driving. The case involved the question of whether he was guilty of contributory negligence for failure to stay awake and watch the driving of his fiance. While the question was not squarely presented, we recognized inferentially that the owner was a guest and that the law applicable to a passenger guest was controlling when we said (249 Minn. 298, 81 N. W. [2d] 837):

"An examination of the authorities in this state and elsewhere lead us to the conclusion that the majority of courts have held that, where the guest has no reason to apprehend danger and goes to sleep, the sleeping does not render the guest contributorily negligent as a matter of law but the question of contributory negligence is properly for the jury, * * *.

"We think the applicable law, under the majority rule, is that evidence showing that the guest passenger in an automobile was asleep at the time

of the accident does not establish contributory negligence as a matter of law; * * *."

In Ray v. Hanisch, 147 Cal. App. (2d) 742, 306 P. (2d) 30, the complaint alleged two counts. The first alleged that, while defendant was driving an automobile owned by plaintiff in which plaintiff was riding, defendant negligently drove the automobile into a ditch, resulting in injuries to plaintiff. The second count realleged these facts and, in addition, alleged that 3 days before the accident plaintiff and defendant agreed to take a vacation for pleasure in plaintiff's automobile under a definite oral agreement whereby they would (147 Cal. App. [2d] 745, 306 P. [2d] 31) "share the travel expenses entailed by the said trip," and that plaintiff would not have consented to or undertaken the trip if she did not have such an agreement with defendant. A general demurrer to both counts was sustained by the trial court. On appeal, the court, after discussing Gledhill v. Connecticut Co. *supra;* Anderson v. Burkardt, *supra;* and Lorch v. Eglin, *supra,* said (147 Cal. App. [2d] 748, 306 P. [2d] 34):

"The primary policy underlying the guest law is to prevent recovery for ordinary negligence by a guest in a vehicle who has accepted the hospitality of the owner. * * * We think the reasoning of the Gledhill and Lorch cases is logical and unanswerable.

"We conclude that *the mere fact* plaintiff was riding in her own car while it was driven by defendant, her friend, does not classify her as a guest within the meaning of section 403; and that the first count, standing alone, states facts sufficient to constitute a cause of action for ordinary negligence." (Italics supplied.)

The court then went on and discussed the second count, wherein the allegations of the first count are realleged, particularly with reference to the question of whether there was payment for the services, and came to the conclusion that the second count was bad and that, in view of the fact that the second count was demurrable, the entire complaint was bad under California rules.

A note discussing the above case, 4 UCLA L. Rev. 654, states:

"The court in the instant case, discussing the first count which alleged

only that plaintiff-owner was injured while defendant was driving, cited cases from Connecticut, New York, and Pennsylvania holding that the owner, under facts similar to those of the principal case, can never be a guest in his own auto. The California court stated that the reasoning of these decisions was 'logical and unanswerable.' At first glance, this would lead a reader of the opinion to believe that the court was following these holdings as to substantive law; but the court merely held that the plaintiff's ownership of the car did not *necessarily* bring her within the guest statute. In the absence of other alleged facts which would classify the plaintiff as a 'guest,' the first count, standing alone, stated a good cause of action for ordinary negligence. The cases in Connecticut, New York and Pennsylvania could have been logically distinguished, for the courts in those states utilize a dictionary definition of guest as a legal definition. * * *

\* \* \* \* \*

"That an owner may be a guest in his own automobile would not seem to be contrary to the legislative purpose behind the guest statute in California. It should be noted that the statute as originally enacted provided for the strict definition of the word 'guest' as now utilized by the courts. Further, the owner is actually enjoying the 'hospitality' of the driver, if one adopts the view that the sharing of expenses on a pleasure trip is an *exchange* of social amenities and *reciprocal* hospitality."

In the later case of Ahlgren v. Ahlgren, 152 Cal. App. (2d) 723, 313 P. (2d) 88, the California court said that in Ray v. Hanisch, *supra,* the court adopted the holding in Gledhill v. Connecticut Co. *supra,* and Anderson v. Burkardt, *supra,* to the effect that the so-called "guest rule" does not apply to an owner who is being driven in his own car. It is difficult to understand that decision. Apparently the court overlooked the part of the former decision on the second count.

It is obvious from an examination of the cases on this subject that the law has developed largely by following the Gledhill case. Connecticut follows the rule that statutes in derogation of the common law must be strictly construed,[4] as does Pennsylvania.[5] As we have shown above,

---

[4] Stoll v. Almon C. Judd Co. 106 Conn. 551, 138 A. 479, 53 A. L. R. 1042.

[5] Williams v. Meredith, 326 Pa. 570, 192 A. 924, 115 A. L. R. 890.

South Dakota follows a rule of liberal construction. Having in mind the more liberal interpretation given these statutes by South Dakota and the purposes for which the statute was enacted as shown by Naudzius v. Lahr, 253 Mich. 216, 234 N. W. 581, 74 A. L. R. 1189, which interpretation was adopted by South Dakota when it enacted its guest law, we think that the dictionary definition of "guest" followed in the Gledhill case and in the old cases dealing for the most part with inns and homes is too restrictive as applied to these motor vehicle guest statutes.

That the owner of an automobile can be a guest while riding in his car under some circumstances can hardly be denied. In Christensen v. Hennepin Transp. Co. Inc. 215 Minn. 394, 404, 10 N. W. (2d) 406, 413, 147 A. L. R. 945, 953, we said:

"The owner of an automobile may be the operator's guest. Where the owner is the guest of the operator of his automobile, the operator's contributory negligence is not imputable to the owner, except where the operator is the owner's servant or agent or where the operator and the owner are engaged in a joint enterprise."

See, also, Sackett v. Haeckel, 249 Minn. 290, 81 N. W. (2d) 833.

The same has been held by other courts. In Reiter v. Grober, 173 Wis. 493, 494, 181 N. W. 739, 740, 18 A. L. R. 362, 363, the Wisconsin court said:

"* * * A man may be a guest in his own automobile."

In McNett v. Volfi, 205 Cal. 89, 92, 269 P. 932, 933, the California court said:

"* * * If it be conceded to appellant that the negligence of Taylor was a concurring cause of plaintiff's injury, the judgment for plaintiff would, nevertheless, be a proper one, for we think the record discloses that she was a guest in her own automobile at the time of her injury and, therefore, any concurring negligence of Taylor was not imputed to her."

See, also, Crawford v. McElhinney, 171 Iowa 606, 154 N. W. 310, Ann. Cas. 1917E, 221; Fox v. Kaminsky, 239 Wis. 559, 2 N. W. (2d) 199; Gorman v. Bratka, 139 Neb. 718, 298 N. W. 691.

It is true that these cases deal for the most part with situations where

it might be said that the driver of the car is a bailee, but they do show that it cannot be said categorically that an owner cannot be a guest while riding in his own car.

Who are guests within the meaning of a guest statute such as we have here probably is not subject to any precise definition. It would be useless to attempt to reconcile the many cases on this subject. Many of them are collected in Annotations, 82 A. L. R. 1365 and 95 A. L. R. 1180. Certainly the dictionary definition used in the Gledhill case is too narrow if any importance is to be attached to the purposes for which this statute was enacted.

The following definition of a guest within the meaning of guest statutes is found in 60 C. J. S., Motor Vehicles, § 399(5):

"A guest, within the meaning of automobile guest statutes, is one who takes a ride in a motor vehicle driven by another person, merely for his own pleasure or on his own business, and without making any return or conferring any benefit on the operator thereof; and the determination of whether a particular person is a guest depends on all the circumstances."

In further explanation of this rule we find the following statement in the text:

"* * * Generally speaking, within the meaning of such statutes, a guest is one who takes a ride in a car driven by another person, merely for his own pleasure or on his own business, and without making any return or conferring any benefit on the operator thereof; one who is carried in an automobile gratuitously, that is, one who gives no compensation for the carriage."

In Langford v. Rogers, 278 Mich. 310, 316, 270 N. W. 692, 695, the court said:

"A 'guest' within the meaning of the Michigan statute here involved may be defined as one who is carried or transported by the owner or operator of the motor vehicle, whether by express invitation or by implied consent or invitation. So long as the party transported accepts the hospitality of the owner or driver, or is carried or transported by reason of an implied invitation of such owner or operator of the motor vehicle,

as in this case, for his own entertainment, pleasure and enjoyment, without compensating the owner of the vehicle, he is a guest within the meaning of the statute."

In Eilts v. Bendt, 162 Neb. 538, 76 N. W. (2d) 623, three soldiers, Glissendorf, Bendt, and Eilts, who were stationed at Fort Riley, Kansas, were involved in an accident. Glissendorf had possession of a car, although the title thereto was not in his name. During a weekend when passes were to be obtained Glissendorf announced that he intended to drive to his home in South Dakota and inquired whether there were others who cared to ride with him. Bendt and Eilts said they would like to go. While Bendt was driving the car an accident occurred. Eilts sued Bendt and Glissendorf. The court held that Eilts was a guest passenger of Bendt even though Glissendorf, who had possession of the car, had extended the invitation and was present when the accident happened. In defining a guest under the Nebraska guest statute, which is similar to the one now before us, the court said (162 Neb. 548, 76 N. W. [2d] 629):

"A person riding in a motor vehicle is a guest if his carriage confers only a benefit upon himself and no benefit upon the owner or operator except such as is incidental to hospitality, social relations, companionship, or the like, as a mere gratuity."

In South Dakota it has been held that a wife riding with her husband, who owns the automobile, is his guest. Scotvold v. Scotvold, 68 S. D. 53, 298 N. W. 266.

In Berlin v. Berens, 76 S. D. 429, 80 N. W. (2d) 79, the court, inferentially at least, held that plaintiff was a guest passenger of a driver of an automobile even though the owner was present in the car. If the literal meaning of guest followed in the Gledhill case were to be used, it would seem that plaintiff should have been held to be the guest of the owner rather than of the driver under these circumstances.

Having in mind the liberal interpretation accorded the guest statute by South Dakota and the manifest purpose for which it was enacted and the objects which it sought to accomplish, we can see no reason why the rights of Mr. Higgins and Mr. Benson against each other should depend on whose car was used. The trip was planned for the mutual

benefit and pleasure of both couples. The use of Mr. Higgins' car had nothing to do with the decision to make the trip. Neither couple went as a result of the invitation of the other. They simply decided to go together so as to enjoy each other's hospitality and company and thereafter decided to use the Higgins car simply because it was newer and had better tires. To hold under these circumstances that one party was host and the other guest under this statute would, we believe, go directly contrary to the intention of the parties. Use of the Higgins car was merely fortuitous, and the relationship of the parties was no different than if they had rented a car belonging to neither. In that event, we think it is clear that each would be held to be the guest of the driver under this statute if an accident happened. We see no reason for not applying the same reasoning here. We are therefore of the opinion that Mr. Higgins was a guest within the meaning of the South Dakota statute at the time of the occurrence of this accident.

In addition to being a guest within the meaning of the guest statute, it must appear that Mr. Higgins was a guest without compensation. Plaintiffs have not argued this phase of the case so we assume that it is admitted that if Mr. Higgins was a guest at all he was a guest without compensation. It is generally held that the mere sharing of expenses of a trip is not such compensation as will remove a person riding in an automobile with another from the status of guest under these guest statutes. Before payment of such expenses can be held to be sufficient to constitute compensation within the meaning of such statute it must appear that there is a legal obligation to pay them and that they serve as the inducing cause of the transportation. In Schiltz v. Picton, 66 S. D. 301, 303, 282 N. W. 519, 520, the court said:

"* * * While it might be that under this statute actual payment in money or other tangible thing is not necessary to exclude one from its terms and render one not a guest, nevertheless, we believe that the statute contemplates some benefit accruing from the transportation to the owner or operator of the motor vehicle in order to render a passenger in a motor vehicle not a guest. Such benefits as are compatible with hospitality, companionship or good fellowship accruing to the owner or operator are not sufficient to take the passenger out of the guest

classification."

In Scotvold v. Scotvold, 68 S. D. 53, 64, 298 N. W. 266, 271, the court said:

"* * * we entertain the view that no basis exists for differentiating such a guest from the true guest the Legislature had in mind unless the benefit he is to bestow on the owner or operator is sufficiently real, tangible and substantial to serve as the inducing cause of the transportation, and to operate to completely overshadow any considerations of mere hospitality growing out of friendship or relationship."

In Tennyson v. Kern, 76 S. D. 136, 144, 74 N. W. (2d) 316, 321, the court said:

"The theory of plaintiff is that he is not subject to the restrictions of the guest statute because the benefit which was to come to Kern through the sharing of the expense of the trip. However, the parties are close friends; the mission upon which they were embarking was wholly and completely social in character; and an ordinary sharing of expenses among them would have taken on that complexion and would have been offered and received as an incident of the occasion. * * * In our opinion, in these circumstances nothing short of a contract which obligated these friends to contribute would have sufficed to establish the fact that their transportation was for compensation."

In construing the Arkansas statute, the South Dakota court in McMahon v. DeKraay, 70 S. D. 180, 187, 16 N. W. (2d) 308, 311, said:

"* * * notwithstanding the fact that a trip may have a social complexion, if the owner of the vehicle insists upon a prearrangement by which his passenger friend is obligated to share the expense, the provision thus made is for such a payment for the transportation as will defeat the relationship of host and guest under the Arkansas statute."

In the above case, the court held that, under the facts of that case, whether the payment of a part of the expenses constituted compensation or not presented a fact question.

In McCann v. Hoffman, 9 Cal. (2d) 279, 285, 70 P. (2d) 909, 912,

the general rule is stated as follows:

"The great weight of authority is to the effect that the sharing of the cost of gasoline and oil consumed on a trip, when that trip is taken for pleasure or social purposes, is nothing more than the exchange of social amenities and does not transform into a passenger one who without such exchange would be a guest, and consequently is not payment for the transportation * * * .

"Therefore, where a special tangible benefit to the defendant was the motivating influence for furnishing the transportation, compensation may be said to have been given. But it is not given where the main purpose of the trip is the joint pleasure of the participants. The payment of a portion of the expense, as for gasoline and oil consumed on the trip, is merely incidental and does not constitute the moving influence for the transportation. The provocation for the offer of transportation remains the joint social one of reciprocal hospitality or pleasure."

See, also, Brody v. Harris, 308 Mich. 234, 13 N. W. (2d) 273, 155 A. L. R. 573.

Here, we have nothing more than a mutual agreement to travel together, each paying his share of the expenses. The understanding was that one day Mr. Higgins would pay the expenses, including board and room, gasoline, and oil, and that at the end of the day he would be reimbursed by Mr. Benson for one-half of the amount he had expended. On the next day Mr. Benson would pay the expenses and he in like manner would be reimbursed. While it might be said that Mr. Higgins, in addition to his share of the expenses, contributed the use of his car, in the absence of any showing that the offer to do so was in some manner the motivating cause of the trip we do not believe that this is enough, under the South Dakota decisions, to constitute him a paying passenger instead of a guest under the statute. As a matter of fact, the Bensons had planned to go to Quantico, Virginia, in their own car before Mr. and Mrs. Higgins made the suggestion that they combine their vacations and travel together. It seems clear that what the parties had in mind was that they would enjoy their reciprocal hospitality in a joint trip for the mutual benefit and pleasure of all of them. Under these circumstances, we think that the jury's findings that Mr. Higgins was a

guest without compensation is amply sustained by the evidence.

■ In the case brought by Charles E. Phelps as trustee for the heirs and next of kin of Eleanor E. Higgins, plaintiff now argues that he is entitled to judgment because the evidence conclusively establishes that Mrs. Higgins was joint owner of the car. This contention probably is of no consequence in view of our holding that Mr. Higgins was a guest without compensation, inasmuch as it would follow that even if Mrs. Higgins was a joint owner she too would be a guest. On the other hand, if she was not a joint owner she clearly would be a guest under the rule of Berlin v. Berens, *supra.* However, plaintiff, in presenting this argument, has raised a question of practice which merits some consideration.

In the complaint, in both the action brought by Mr. Higgins and the action brought by the trustee for the benefit of the heirs and next of kin of Mrs. Higgins, it is alleged that Mr. Higgins was the owner of the automobile involved. After commencement of the action, plaintiffs made a request that defendant admit the following facts:

"Does defendant admit that George A. Higgins was the owner of the following described automobile, to-wit: [there followed a description of the automobile]?"

Defendant answered "Yes."

The case was submitted to the jury on a special verdict. Among other things the court instructed the jury:

"You will also set down under question number 4-A-2 and 3, such sum as would reasonably compensate him [Mr. Higgins] for * * * depreciation of his car * * *."

The question submitted to the jury on this issue was:

"Question No. 4: What sum would reasonably compensate:

"A. Mr. Higgins for:

\* \* \* \* \*

"3. Depreciation of his car?"

Nowhere during the trial was any request made for amendment of the pleadings; there was no request that the court submit any question to the jury respecting ownership of the car; and there was no exception to the charge as given. It was not until after verdict that plaintiff first

raised any question as to who was the owner of this car. No specific error is assigned in the motion for a new trial, although apparently it was argued, since in its memorandum the court said:

"Plaintiffs now claim Mr. and Mrs. Higgins were owners of the automobile involved, although in both complaints it is stated that Mr. Higgins was the owner and in plaintiffs' 'Request for Admissions under Rule 36' dated June 16, 1955, and filed herein on June 17, 1955, the following demand for admission was made:

" 'Does defendant admit that George A. Higgins was the owner of the following described automobile, to-wit: [description of automobile]?'
"Mr. Higgins testified that the automobile was purchased with funds from a bank account jointly owned by him and his deceased wife, but the matter of ownership of said car was not litigated nor was it made an issue. The first mention of this possibility was on motion after verdict."

Plaintiff now argues that, in spite of his allegation of ownership in the complaint; the admission by defendant of ownership in answer to plaintiff's request under Rule 36 of Rules of Civil Procedure; the fact that the case was submitted to the jury on the theory that Mr. Higgins was the owner without any request that it be otherwise submitted; and the failure to take exceptions to the instructions of the court, he is still entitled to judgment on some other theory than that on which the case was submitted to the jury. Plaintiff takes the position that under Rule 15.02, even though there was no amendment of pleadings, no request for submission of the issue to the jury, and no exception to the manner in which it was submitted, he still is entitled to judgment.

We cannot agree that our rules permit such loose practice. Under our rules of practice, pleadings do not have the binding force they once had, but they are not meaningless. They still have some purpose in defining the issues to be tried, and, when essential facts are admitted by the pleadings or by admissions under Rule 36, they no longer are in issue until some action is taken to apprise the court and adversary that a litigant wishes to abandon the position he formerly has taken and change his course of procedure. Plaintiff relies upon Colstad v. Levine, 243 Minn. 279, 67 N. W. (2d) 648, but there should be little difficulty in distinguishing that case from the one now before us. In that case

we said (243 Minn. 284, 67 N. W. [2d] 653):

"In their original complaint plaintiffs claimed only a permanent easement to the eight-foot driveway. The day before the trial, the court, over the objections of the defendant, permitted plaintiffs to amend their complaint by substituting for the theory of easement an allegation of outright ownership. At the time the amendment was allowed, the court offered to grant the defendant additional time in which to prepare for the trial. The defendant assured the court that he desired no delay and that he was ready to proceed. Rule 15.01 of Rules of Civil Procedure provides that pleadings may be amended with leave of court and that 'leave shall be *freely* given *when justice so requires.*' (Italics supplied.) This rule, which makes no substantial change in our prior Minnesota practice, vests wide discretionary powers in the trial court for the liberal granting of an amendment to the pleadings when justice in the particular case so requires, even though the proposed amendment may change the legal theory of the action."

In that case the parties availed themselves of the opportunity to change their course of action by requesting the court for leave to amend their pleadings. They did not, as plaintiff claims they could do, sit silently by and try the case on the issues raised by the pleadings and thereafter claim the right to prevail on some other theory. If a litigant cannot depend on the fact that when he admits the truth of allegations in plaintiff's complaint, either by his answer or by answers to requests for admissions under Rule 36, that fact no longer is in issue until plaintiff takes some action to abandon his original position by motion to amend, request for submission of the issue to the jury, or in some other way so as to apprise the court and adverse parties that he wishes to abandon his original course, then our rules of practice, instead of simplifying procedure as they were intended to do, have simply become a trap for the unwary. We have no intention of construing our rules so as to permit that type of unfair practice. It should not be necessary for a litigant to be prepared to controvert facts which his adversary has alleged in his pleading and which he has admitted to be true until such pleader takes some action to abandon his original position and litigate the issue, and, if that takes place, then the court, if necessary, should

give him an opportunity to prepare to meet that issue.

In Briggs v. Kennedy Mayonnaise Products, Inc. 209 Minn. 312, 319, 297 N. W. 342, 346, we said:

"Where an implied consent to litigate an issue is claimed, it is to be gathered from the course of the trial. * * * The only basis for the claim of litigation by consent is that the evidence showing the credit was received without objection. That under the circumstances of the case is not sufficient. There is a presumption that evidence is offered and received with reference to the issues made by the pleadings."

In Roberge v. Cambridge Co-op. Creamery Co. 243 Minn. 230, 233, 67 N. W. (2d) 400, 403, we said:

"Under this rule amendments are to be freely allowed to encourage the presentation of the merits of the controversy. Where a party fails to take advantage of this procedure, he is bound by the pleadings unless the other issues are litigated by consent. Clearly relief cannot be based on issues that are neither pleaded nor voluntarily litigated."

The mere failure to object to one question which was contrary to the theory on which plaintiff commenced that case, without more, can hardly be considered as an implied consent to litigate that question. We think that, if defendant had made such claim after admitting the truth of ownership, plaintiff would have good cause to complain.

Even if the question were in issue, the evidence amply sustains a finding that Mr. Higgins was the owner of the car. In his brief plaintiff says:

"* * * At the time of the complaint and the request for admissions, plaintiffs believed that they could show wanton and wilful misconduct, in which case the guest statute would have been irrelevant. At that posture of the case it was natural to rely on the registered title to the car, rather than exploring what seemed to be the unnecessary issue of actual ownership. But it has been clear in this state for nearly a century that a party is not bound to a single 'theory of the case,' and that judgment is to be awarded according to the facts,* * *."

Apparently plaintiff believes that he has a right to rely on the allegations of the complaint but that his adversary does not. However, it is only

by ignoring all the evidence adverse to him that he comes to the conclusion that the evidence is conclusive that Mrs. Higgins was coowner of the car. The car was registered in Mr. Higgins' name. That establishes prima facie ownership.[6] While Mr. and Mrs. Higgins maintained a joint bank account, there is nothing in the record to show that the car was purchased out of such account. With the exception of one question and answer, everyone throughout the trial referred to the car as Mr. Higgins' car. Mrs. Benson testified:

"Q.    Whose car was to be used?
"A.    Mr. Higgins'."

Mr. Higgins testified:

"Q.    Whose car was to be used?
"A.    Mr. and Mrs. Benson had an old car, they had a three year old car, I believe it was almost that at the time, and the tires were not too good, so they suggested that we use *my car*. Mr. Benson and I talked it over and decided to use *my car*.

*    *    *    *    *

"Q.    What was the condition of your car?
"A.    *My car* was brand new." (Italics supplied.)

Mr. Benson testified:

"Q.    And Mr. Higgins had a newer car?
"A.    Yes.

*    *    *    *    *

"Q.    So that would be one of the reasons why you took his car, is that right?
"A.    That's right."

The one exception is the question which was asked and answered without objection, reading:

"Q.    * * * Now, who owned this 1953 Oldsmobile?
"A.    I owned it with my wife. We bought it together.
"Q.    But it was in your name, wasn't it?

---

[6]Flaugh v. Egan Chevrolet, Inc. 202 Minn. 615, 279 N. W. 582; State v. One Oldsmobile Sedan, 227 Minn. 280, 35 N. W. (2d) 525.

"A. It was in my name, yes."

When that question was asked and answered there was no intimation that plaintiff intended to abandon the position taken in his complaint that Mr. Higgins was the owner of the car.

There having been no request to submit this issue to the jury, it must be held that under Rule 49.01 plaintiff waived the right to have the jury decide the issue. While the court made no specific finding on it, it did indicate in its memorandum that the evidence established that Mr. Higgins was the owner. Furthermore, Rule 49.01 provides that, if the court omits to submit an issue of fact raised by the pleadings or by the evidence to the jury, each party waives his right to a trial by jury of the issue so omitted unless, before the jury retires, he demands its submission to the jury. It further provides that as to an issue omitted without such demand the court may make a finding, or, if it fails to do so, it shall be deemed to have made a finding in accord with the judgment on the special verdict. A finding in accord with the special verdict awarding damages to Mr. Higgins for his car and none to the heirs and next of kin of Mrs. Higgins could hardly be other than that he was the owner of the car and she was not.

But we think that the trial court was right in holding that the question of ownership was not in issue. Where a fact is admitted in the pleadings, the admission stands in the place of evidence. Dexter v. Moodey, 36 Minn. 205, 30 N. W. 667.

The South Dakota wrongful death statute (S. Dak. Code of 1939, § 37.2203) provides that such action shall be brought in the name of the executor or special representative of the deceased person. Here it was brought by a trustee for the heirs and next of kin according to Minnesota practice. Defendant contends that plaintiff has no legal authority to maintain such action based on the South Dakota statute. Inasmuch as defendant prevails on the merits, we need not determine this issue. Defendant has taken no appeal, and the question has not been raised by plaintiff.

Nor need we decide whether the court correctly determined that Mr. Higgins, even though a guest without compensation, could recover damages for the destruction of his automobile.

Affirmed.